1999-NMCA-010

972 P.2d 859

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Pamalia PRINCE, Defendant–Appellant.**

**No. 19,258.**

Court of Appeals of New Mexico.

Nov. 10, 1998.

548

Tom Udall, Attorney General, Santa Fe, Max Shepherd, Ass't Attorney General, Albuquerque, for Appellee.

Phyllis H. Subin, Chief Public Defender, Lisabeth L. Occhialino, Ass't Appellate Defender, Santa Fe, for Appellant.

*OPINION*

DONNELLY, Judge.

{1} Defendant appeals her conviction of resisting, evading or obstructing an officer in violation of NMSA 1978, § 30–22–1(D) (1981). Three issues are raised on appeal: (1) whether her trial counsel erred in failing to tender jury instructions on excessive force and self-defense, and such omission constituted ineffective assistance of counsel; (2) whether the trial court erred in not instructing the jury sua sponte on excessive force, self-defense, and defense of property in lieu of the evidence presented; and (3) whether the trial court erred in not granting a directed verdict. Because we determine that the evidence was insufficient to support Defendant's conviction and that the trial court erred in denying the motion for a directed verdict, thus requiring reversal, we need not address the other issues posed by Defendant.

*FACTS*

{2} On February 24, 1997, Kevin McCormack and Regina Sentell, two Children, Youth and Families Department (the CYFD) social workers, accompanied by Lawrence L. Cox, a Chaves County Deputy Sheriff, went to Defendant's trailer home. The visit was prompted by a report the CYFD had received four days earlier concerning Defendant's children. As part of a safety precaution, the social workers had requested the deputy to accompany them to Defendant's residence where they wanted to interview the children and inspect Defendant's home. Neither the social workers nor Cox had a court order regarding the children or a change in their custody, nor a warrant for Defendant's arrest, and, at trial, they conceded that the visit was not considered an emergency. Cox stated that he was present on "standby" only to prevent a breach of the peace, that he did not suspect Defendant of any criminal activity, and that he was not there to investigate any criminal act.

{3} When Cox knocked on Defendant's door, Defendant stuck her head outside and asked what the three individuals wanted. Cox explained that they just wanted to ask her a few questions. Defendant grabbed a western wool shirt and put it on over her flannel nightgown and jeans and came outside onto the porch shutting the door behind her. When Defendant exited from her house, she was barefooted despite it being winter. Cox asked Defendant for permission for the social workers to inspect her home and to interview her children. Defendant refused them entry, but offered to make her children available later. She stated that she did not want the social workers in her home, particularly, McCormack with whom she had had prior dealings. Defendant offered to make her children available for an interview outside of the home, a procedure the CYFD often utilized.

{4} For approximately ten to fifteen minutes, the social workers and Cox continued to talk to Defendant and attempted to persuade her to grant them access into her home. Defendant continued to refuse these requests. As the encounter lengthened, the voices of Defendant and the social workers heightened.

{5} After about fifteen minutes of standing barefoot on the wooden porch, Defendant indicated to Cox and the social workers that her feet were getting cold and said, "I cannot stand out here like this. I have got to get

something on my feet[,]" and, at this point, she started to open her door. Cox testified that he told Defendant to stay on the porch because "we were still conducting the investigation." Cox then grabbed Defendant's arm and said for the first time that she had to "stay outside until we leave—until we've finished." Cox explained at trial that he was just about to leave before Defendant stated she was going to go inside. He conceded that Defendant would not have known he was preparing to depart and that he did not convey this information to her. Cox testified that he did not want Defendant to go inside because he believed that Defendant might be going to get a weapon, even though he acknowledged that at no time had Defendant threatened the social workers or attempted to hurt them.

{6} After Defendant told the trio she was going inside to get some footwear, she leaned around the door and opened it approximately eighteen inches and attempted to go inside. At that time, Cox grabbed Defendant's hand and the door in an attempt to keep the door open and to keep Defendant from entering her home. Defendant testified that she became scared that the others were going to force their way into her home. She also stated that she was concerned that her door might be damaged. Defendant said to Cox, "don't do that," reached up to push his hand off the door and said, "you're bending my door." Defendant then let go of the door and tried to pull it shut by the chain. When Defendant let go of the door, Cox, who was pulling on Defendant, lost his balance on the icy, unstable porch and the pair fell off the porch. After the fall, Defendant scrambled up the porch, closed the door, and remained outside sitting on the porch with her back against the door. At this juncture, Cox dragged Defendant off the porch by her ankles, handcuffed her, and placed her under arrest.

{7} The State charged Defendant with resisting, evading or obstructing an officer and with battery of an officer in violation of Section 30–22–1(D) and NMSA 1978, § 30–22–24 (1971). Following a jury trial, the jury found Defendant not guilty of battery of an officer, but guilty of resisting, evading or obstructing an officer.

## DISCUSSION

{8} We turn first to the issue of whether the trial court erred in denying Defendant's motion for a directed verdict at the close of the State's case-in-chief.

{9} A motion for a directed verdict is essentially a challenge to the sufficiency of the evidence. *See State v. Armijo,* 1997–NMCA–080, ¶ 16, 123 N.M. 690, 944 P.2d 919; *see also State v. Romero,* 111 N.M. 99, 101, 801 P.2d 681, 683 (Ct.App.1990). *See generally* Rule 5–607(K) NMRA 1998 (trial court has duty to "determine the sufficiency of the evidence, whether or not a motion for directed verdict is made"). Defendant claims that Cox had no reasonable suspicion that a crime had occurred when he visited her home and that she was entitled to a directed verdict because the State failed to prove that she had committed any criminal offense or that she was guilty of resisting an officer contrary to Section 30–22–1(D). We agree.

{10} Defendant cites *State v. Frazier,* 88 N.M. 103, 537 P.2d 711 (Ct.App.1975), inter alia, in support of her argument that Cox was acting outside of his authority. In *Frazier* this Court held that an officer exceeded his authority when he sought to detain an individual without reasonable suspicion or probable cause. *See id.* at 105, 537 P.2d at 713. The *Frazier* Court explained that because the officer had no valid basis for detaining the defendant, who was not suspected of any criminal activities, the arrest was unlawful, and the defendant's acts of refusing the officer's request to accompany him to her hotel room and attempting to leave the area did not constitute resisting or obstructing an officer. *See id.*

{11} Responding to this argument, the State asserts that *State v. Doe,* 92 N.M. 100, 583 P.2d 464 (1978), is controlling. In *Doe* our Supreme Court held "that a private citizen may not use force to resist a search by an authorized police officer engaged in the performance of his duties whether or not the arrest is illegal" and that an officer must be on " 'a personal frolic of his own' " in order to be deemed to have exceeded his lawful au-

thority. *Id.* at 103, 583 P.2d at 467 (quoting *United States v. Heliczer,* 373 F.2d 241, 245 (2d Cir.1967)). The *Doe* Court concluded that the officer acted within the scope of his authority when he conducted a routine search of the defendant pursuant to jail procedures, and that the defendant who forcibly resisted the search was guilty of battery upon a police officer. *See id.* The *Doe* Court also noted that the booking officers who performed the search therein had done so in good faith pursuant to regular jail procedure; that they had utilized reasonable force; and that even if the initial arrest was illegal, the defendant could not resort to self-help measures to resist the officers during booking. *See id.* at 102–03, 583 P.2d at 466–67. We do not believe *Doe* is controlling under the facts herein.

■ {12} We agree with the State that Cox was not on a personal frolic or acting outside the scope of his lawful authority when he accompanied the social workers to Defendant's home and sought to persuade her to allow them to inspect her home and to interview her children. The record indicates that Cox frequently assisted social workers in investigating other referrals of this type. Similarly, it is clear that the CYFD had a legitimate interest in asking Cox to accompany the social workers to Defendant's home in order to preserve the peace, particularly where the evidence discloses that McCormack and Defendant had had prior disagreements. The power and duty of a law enforcement officer to suppress breaches of the peace includes the right to take any reasonable steps to prevent such breaches from occurring when the officer has good reason to believe that a disturbance may occur. *See Romero v. Sanchez,* 119 N.M. 690, 693, 895 P.2d 212, 215 (1995); *State v. Hilliard,* 107 N.M. 506, 508, 760 P.2d 799, 801 (Ct.App. 1988); *see also* NMSA 1978, § 4–41–2 (1865); NMSA 1978, § 29–1–1 (1979). So long as officers act in good faith and use no more force than reasonably necessary to preserve the peace, they are accorded reasonable latitude in the use of force, because emergencies may arise wherein an "officer cannot be expected to exercise [the same] cool and deliberate judgment" of courts and juries in subsequent court proceedings. *State v. Gon-*

*zales,* 97 N.M. 607, 610, 642 P.2d 210, 213 (Ct.App.1982) (quoting *Mead v. O'Connor,* 66 N.M. 170, 173, 344 P.2d 478, 480 (1959)).

■ {13} However, based on the record before us, the trial court erred in not granting Defendant's motion for a directed verdict, even viewing the evidence in the light most favorable to the verdict. As a matter of law, Defendant's conduct did not constitute resisting, evading or obstructing an officer in violation of Section 30–22–1(D). The timing of Cox's statements to Defendant, telling her to remain outside, and his act of grabbing her arm and pulling her to prevent her entry into her home, triggered the events which caused them both to fall off the porch.

{14} Under UJI 14–2215 NMRA 1998, in order for the State to prove the offense of resisting, evading or obstructing an officer, it must establish that: (1) Cox was a peace officer in the lawful discharge of his duties; (2) Defendant, with the knowledge that the officer was attempting to apprehend or arrest her, fled, attempted to evade or evaded the officer, or that Defendant resisted or abused the officer; and (3) such events occurred in New Mexico on the date in question. Our review of the record indicates that there was insufficient evidence to establish the second element, i.e., that, at the time Defendant sought to reenter her home, she was aware that Cox was attempting to apprehend or arrest her, or that she was seeking to resist, evade or obstruct the officer, or that she resisted or abused the officer. Cox admitted that at no time did Defendant threaten the social workers or make any statement about getting a weapon. He also stated that he did not tell her that she had to stay outside until she told the trio she was going inside to obtain some footwear, prompting him to grab her. It was at this juncture that Cox and Defendant fell off the icy porch.

{15} In ascertaining whether there was sufficient evidence from which the jury could have convicted Defendant of resisting, evading or obstructing an officer, we consider the evidence in the light most favorable to the verdict of the jury. *See State v. Wade,* 100 N.M. 152, 154, 667 P.2d 459, 461 (Ct.App.

1983). " 'Resisting, evading or obstructing an officer' primarily consists of physical acts of resistance." *Id.* at 153, 667 P.2d at 460 (quoting Section 30–22–1). In addition, Section 30–22–1(D) proscribes acts constituting "abuse" of a police officer. Abuse includes not only physical acts but "also refers to speech." *Wade,* 100 N.M. at 153, 667 P.2d at 460. The *Wade* Court held that abusive speech within the context of Section 30–22–1(D) is narrowly circumscribed by the First and Fourteenth Amendments of the United States Constitution and Article 11, Section 17 of the New Mexico State Constitution. Under Section 30–22–1(D), it "covers only speech that can be called 'fighting' words." *Wade,* 100 N.M. at 154, 667 P.2d at 461.

{16} In *State v. Diaz,* 121 N.M. 28, 908 P.2d 258 (Ct.App.1995), this Court recognized that resisting an arrest, defined by Section 30–22–1(D), is a lesser included offense of battery on a police officer as defined by Section 30–22–24. *See id.* at 31, 908 P.2d at 261 (citing *State v. Padilla,* 101 N.M. 78, 80, 678 P.2d 706, 708 (Ct.App.1983), *rev'd on other grounds,* 101 N.M. 58, 678 P.2d 686 (1984), *aff'd sub nom. Fugate v. New Mexico,* 470 U.S. 904, 105 S.Ct. 1858, 84 L.Ed.2d 777 (1985)). The jury in this case, however, concluded that there was insufficient evidence to convict Defendant of acts constituting battery of an officer.

{17} The State does not argue that Defendant used fighting words or language which could be deemed abusive toward Cox or the social workers, and there was no such evidence before the trial court. " 'Fighting' words are those which tend to incite an immediate breach of the peace." *Wade,* 100 N.M. at 154, 667 P.2d at 461. " 'Fighting words' have also been defined as '. . . those personally abusive epithets which, when addressed to the ordinary citizen, are, as a matter of common knowledge, inherently likely to provoke violent reaction.' " *State v. James M.,* 111 N.M. 473, 476, 806 P.2d 1063, 1066 (Ct.App.1990) (quoting *Cohen v. California,* 403 U.S. 15, 20, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971)). Defendant's voice rose during the fifteen-minute exchange with Cox and the social workers; however, Cox conceded that Defendant did not threaten him or the social workers. Nothing in Defendant's verbal exchange with Cox and the social workers could, as a matter of law, indicate an imminent breach of the peace. *See Doe,* 92 N.M. at 102, 583 P.2d at 466 (reversing defendant's conviction for disturbing peace because questioning police in loud voice about why car stopped, claiming harassment, attracting public attention, and clenching fists did not amount to breach of peace). Further, nothing in the record indicates that Defendant verbally resisted, evaded or obstructed Cox. Her refusal to allow Cox or the social workers admission into her home cannot be considered unlawful under the circumstances existing here. *Cf. Frazier,* 88 N.M. at 105, 537 P.2d at 713 (officer held to have exceeded authority in detaining defendant).

{18} Defendant voluntarily spoke with Cox and the two social workers between ten and fifteen minutes while standing barefoot on the porch on a mid-February morning. Defendant attempted to reenter her home and put on some footwear when she realized that the conversation would be further prolonged. She told the deputy and the social workers where she was going and why. In the absence of an arrest or a lesser detention justified by reasonable suspicion of criminal activity, the officer could not justifiably order Defendant to remain outside in the cold in her bare feet. Here, the jury found that the State failed to prove any improper use of force on Defendant's part. She was acquitted of battery. Moreover, there is no evidence that Defendant resisted Cox's order to remain outside; in fact, after she and Cox fell from the porch and she had regained her balance, she remained outside sitting on the porch until she was handcuffed and formally arrested.

## CONCLUSION

{19} Defendant's conviction is reversed and the cause is remanded with instructions to dismiss the judgment against her.

{20} IT IS SO ORDERED.

BOSSON and ARMIJO, JJ., concur.