**Thomas SMITH, Plaintiff–Appellant,**

v.

**CITY OF HEMET, a municipal corporation; Hemet Police Department; Lee Evanson; Dave Quinn; Aaron Medina; Reinbolt; Trainer; Nate Miller; Peter Hewitt, Defendants–Appellees.**

No. 02–56445.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 8, 2003.

Filed Jan. 29, 2004.

Donald W. Cook, Esq. and Robert Mann, Esq., Los Angeles, CA, for the plaintiff-appellant.

Julie H. Biggs, City Attorney, Hemet, CA; Elizabeth R. Feffer, Esq., Burke, Williams & Sorensen, LLP, Los Angeles, CA, for the defendants-appellees.

Before SILVERMAN, W. FLETCHER, and RAWLINSON, Circuit Judges.

Opinion by Judge RAWLINSON; Dissent by Judge W. FLETCHER

## OPINION

RAWLINSON, Circuit Judge.

In this case, we once again address the quagmire created by the interplay between *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) and convictions for violations of California Penal Code § 148. Because the California courts have interpreted § 148 in such a manner as to incorporate a finding of no excessive force, we AFFIRM the district court's ruling that *Heck* bars Thomas Smith's § 1983 action.

## I. FACTS/PROCEDURAL HISTORY

This saga began when Smith's wife, Cynthia, placed an emergency phone call to the Hemet Police Department ("Depart-

ment") reporting that her husband "was hitting her and/or was physical with her."

Officer Reinbolt was the first officer to arrive in response to the call. Upon his approach, Officer Reinbolt observed Smith standing on his front porch. Officer Reinbolt directed his flashlight towards Smith "and noticed Smith's hands in his pockets."[1] Officer Reinbolt announced himself and instructed Smith to remove his hands from his pockets. Smith refused, responding with expletives and directing Officer Reinbolt to approach. Officer Reinbolt informed Smith that he would approach, but only after Smith removed his hands from his pockets to demonstrate he had no weapons. Smith again refused to remove his hands from his pockets and instead entered his home.

After Officer Reinbolt advised dispatch that Smith refused to remove his hands from his pockets and had just reentered his home, Smith reemerged onto the porch with his hands still in his pockets. Officer Reinbolt again requested that Smith show his hands. Smith eventually complied with this instruction, but repeatedly refused to comply with Officer Reinbolt's instruction to "put his hands on his head and walk towards [the officer's] voice[.]" Instead, Smith again directed Officer Reinbolt to approach and enter the home with him.

Officer Nate Miller arrived in response to Officer Reinbolt's radioed request for assistance. Observing Smith's refusal to cooperate with Officer Reinbolt, Officer Miller contacted dispatch to request additional assistance. Officer David Quinn, a canine handler with the Department, arrived shortly thereafter with "Quando," a police canine. Officer Aaron Medina also responded to assist Officer Reinbolt.

---

1. Smith's wife informed the 911 operator that her husband was unarmed and that there were no weapons in the house. She also told the 911 operator that Smith was clad in pajamas.

Officer Quinn instructed Smith to turn around and place his hands on his head. Smith refused, despite being informed that Quando might be sent to subdue him and might bite. Without warning, Officer Quinn sprayed Smith in the face with pepper spray. Smith responded with expletives and attempted to reenter his residence. Several officers then grabbed Smith from behind, slammed him against the door, and threw him to the ground. Quando bit Smith on his right shoulder and neck area.

Although Smith agreed to comply while Quando was biting him, he admitted that he was "curled up," in an attempt to shield himself from the dog and that one of his hands was "tucked in somewhere," still out of the officer's view. As an officer attempted to secure both arms, Quando bit Smith a second time, this time on his left shoulder blade. Quando retreated, and the officers dragged Mr. Smith off the porch, face down. Once off the porch, Smith continued to hide his arms under his body; Quando bit Smith a third time, on the buttock.

Eventually, Smith complied with the officers' efforts to place him in handcuffs. Officer Reinbolt washed Smith's eyes out with water from a nearby hose. Paramedics arrived shortly thereafter and attended to Smith, who required no serious medical treatment.

The Riverside County District Attorney's Office filed charges against Smith for spousal battery in violation of Cal.Penal Code § 243(e) and for "resist[ing], delay[ing] and obstruct[ing]" an officer in the performance of his duties in violation of Cal.Penal Code § 148. Smith pled guilty to both counts.

Smith subsequently filed a federal Complaint under 42 U.S.C. § 1983 alleging that the officers used excessive force. Appellees moved for summary judgment, which the district court granted on the basis of *Heck v. Humphrey.* Judgment was entered, and Smith filed a timely Notice of Appeal.

## II. STANDARDS OF REVIEW

We review the district court's grant of summary judgment *de novo. See Cunningham v. Gates,* 312 F.3d 1148, 1153 (9th Cir.2002). "Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether there are any genuine issues of material fact, and whether the district court correctly applied the relevant substantive law." *Jackson v. City of Bremerton,* 268 F.3d 646, 650 (9th Cir.2001) (citation omitted).

## III. ANALYSIS

### Smith's conviction for resisting arrest bars his excessive force claim.

In *Heck v. Humphrey,* the United States Supreme Court held that:

[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.... A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence;

if it would, the complaint must be dismissed . . .

512 U.S. at 486–487, 114 S.Ct. 2364.[2]

■ Under Cal.Penal Code § 148, "[e]very person who willfully resists, delays, or obstructs any public officer [or] peace officer . . . in the discharge or attempt to discharge any duty of his or her office or employment" is punished as a misdemeanor offender. Cal.Penal Code § 148(a)(1). "The legal elements of a violation of section 148, subdivision (a) are as follows: (1) the defendant willfully resisted, delayed, or obstructed a peace officer, (2) when the officer was engaged in the performance of his or her duties, and (3) the defendant knew or reasonably should have known that the other person was a peace officer engaged in the performance of his or her duties." *In re Muhammed C.*, 95 Cal. App.4th 1325, 1329, 116 Cal.Rptr.2d 21 (2002) (citations omitted).

Smith contends that the force the officers used to effect his arrest was excessive. However, the California Court of Appeal's construction of Cal.Penal Code § 148 makes it clear that a successful excessive force claim would necessarily render a § 148 conviction invalid. *See Susag v. City of Lake Forest*, 94 Cal.App.4th 1401, 1405–1406, 115 Cal.Rptr.2d 269

(2002). In explaining its ruling, the Court of Appeal observed that:

> In California, the lawfulness of an arrest is an essential element of the offense of resisting or obstructing a peace officer. If the officer was not performing his or her duties at the time of the arrest, the arrest is unlawful and the arrestee cannot be convicted under Penal Code section 148, subdivision (a). *"[E]xcessive force by a police officer . . . is not within the performance of the officer's duty."*

*Id.* at 1409, 115 Cal.Rptr.2d 269 (citations omitted) (emphasis added) (alteration in the original).

■ We are bound by decisions of the California Supreme Court interpreting a California statute. *See Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir.2001) ("When interpreting state law, federal courts are bound by decisions of the state's highest court.") (citation omitted). Should no Supreme Court authority exist, and "[i]n the absence of convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate courts." *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1494 n. 4 (9th Cir.1996) (citation and internal quotation marks omitted).

**2.** The dissent, citing *Nonnette v. Small*, 316 F.3d 872 (9th Cir.2002), argues that we are required to allow Smith to proceed because he was no longer in custody when we heard his appeal and, thus, was unable to file a petition for habeas corpus under 28 U.S.C. § 2254. When we allowed Nonnette to proceed, however, we recognized that "[t]he district court . . . committed no error in deciding as it did . . . because habeas corpus would have been available to test the validity of the disciplinary proceeding" when it entered its decision. *Id.* at 877. We made an exception for Nonnette, who was challenging a prison disciplinary proceeding, because "we have statutory authority to provide such relief 'as may be just under the circumstances,'" *id.* at 878 (quoting 28 U.S.C. § 2106) and, in that

"instance, we conclude[d] that justice require[d] that we . . . permit Nonnette to proceed with his § 1983 claims . . . *Id.*

If asked to make such an exception here (something Smith has *not* done), we would look at the opportunity Smith had to file a habeas petition. While Nonnette had just under a year, Smith had three years—of which three months remained when the district court entered its decision dismissing the case on *Heck* grounds. Yet, he inexplicably failed to seek habeas relief. We, therefore, would *not* make an exception in his case because to permit Smith to sit out his right to file a petition for writ of habeas corpus so that he can attack his conviction by way of a § 1983 lawsuit is exactly what *Heck* seeks to avoid.

The California Supreme Court has not directly interpreted California Penal Code § 148 as incorporating the lawful use of force. However, it does not appear that the California Supreme Court would decide the issue any differently than the California Court of Appeal. To the contrary, the California Supreme Court has implicitly accepted the interpretation adopted by the California Court of Appeal. "Section 148 has long been construed by the courts as applying only to lawful arrests . . ." *People v. Curtis*, 70 Cal.2d 347, 354, 74 Cal.Rptr. 713, 450 P.2d 33 (1969), *disapproved on other grounds in People v. Gonzalez*, 51 Cal.3d 1179, 1222, 275 Cal.Rptr. 729, 800 P.2d 1159 (1990). "[I]f the arrest is ultimately determined factually to be unlaw-

ful, the defendant can be validly convicted only of simple assault or battery." *Id.* at 355–56.

■ California law leaves us no choice but to regard a § 148 conviction as incompatible with an allegation that the arrest was unlawful. "[W]here excessive force is used in making what otherwise is a technically lawful arrest, the arrest becomes unlawful . . ." *People v. White*, 101 Cal. App.3d 161, 164, 161 Cal.Rptr. 541 (1980).[3] Thus, an allegation that excessive force was used in *making* an arrest is incompatible with . . . a § 148 conviction. *See* California Jury Instructions, Criminal ("CALJIC") No. 16.110, 16.111.[4]

For Smith to proceed on his excessive force claim, he must allege facts that

---

**3.** This aspect of California law distinguishes the instant case from those regarded by the dissent as conflicting with our opinion. In *Nelson v. Jashurek*, 109 F.3d 142 (3rd Cir. 1997), Nelson was allowed to proceed on a § 1983 claim, despite having an outstanding conviction for resisting Jashureck's arrest, because in Pennsylvania "a finding that Jashureck used excessive 'substantial force' would not imply that the arrest was unlawful . . ." *Nelson*, 109 F.3d at 145 (internal quotation marks in original). Similarly, in *Martinez v. City of Albuquerque*, 184 F.3d 1123 (10th Cir. 1999), Martinez was allowed to proceed with a § 1983 claim "to the extent . . . [it] d[id] not challenge the *lawfulness* of his arrest . . . [under New Mexico law]." *Martinez*, 184 F.3d at 1125 (emphasis in original). Finally, in *Robinson v. Doe*, 272 F.3d 921 (7th Cir.2001), a § 1983 action asserting that Robinson was arrested with excessive force was not barred by *Heck* because, under Illinois law, "[p]olice might well use excessive force in effecting a perfectly lawful arrest." *Robinson*, 272 F.3d at 923.

**4.** CALJIC 16.110. Performing or Discharging Duties of Officer—

Burden of Proof

In a prosecution for violation of [ ], the People have the burden of proving beyond a reasonable doubt that the peace officer was [engaged in the performance of [his] [her]

duties] [or] [discharging or attempting to discharge a duty of[his] [her] office].

*A peace officer is not [engaged in the performance of [his] [her] duties] [or] [discharging or attempting to discharge a duty of [his][her] office] if [he] [she] [makes or attempts to make an unlawful [arrest] [detention]] [or] [uses unreasonable or excessive force in making or attempting to make the [arrest] [detention]].*
(emphasis added).

CALJIC 16.111. Use of Excessive Force by Officer

A peace officer is not permitted to use unreasonable or excessive force [in making or attempting to make an otherwise lawful arrest] [in detaining or attempting to detain a person for questioning].

If an officer does use unreasonable or excessive force [in making or attempting to make an arrest] [in detaining or attempting to detain a person for questioning], the person being [arrested] [detained] may lawfully use reasonable force to protect [himself] [herself].

Thus, if you find that the officer used unreasonable or excessive force [in making or attempting to make the arrest] [in making or attempting to make the detention] in question, and that the defendant used only reasonable force to protect[himself] [herself], the defendant is not guilty of the crime charged [in Count[s]] [or of any lesser included offense].

would support a finding that the police used excessive force after his arrest was effected. However, as the district court noted, "even under Plaintiff's version of the events, the Defendants sprayed him in the face with pepper spray and had the dog bite him *while* arresting him." Order at 8 (emphasis in the original). Thus, we find that Smith's § 148 conviction bars him proceeding with his particular § 1983 claim.

Smith relies on *Sanford v. Motts,* 258 F.3d 1117 (9th Cir.2001) to support his position. It is true that in *Sanford* we allowed a § 1983 claim for excessive force to proceed despite the fact that the plaintiff was convicted under Cal.Penal Code § 148(a)(1). However, in *Sanford,* we emphasized that the excessive force occurred after the arrest was completed. *See* 258 F.3d at 1120. In this case, the alleged excessive force occurred contemporaneously with the arrest, and directly implicated *Heck's* holding.

We have recently observed that "[u]nder *Heck* . . . 'if a criminal conviction arising out of the same facts stands and is fundamentally inconsistent with the unlawful behavior for which section 1983 damages are sought, the 1983 action must be dismissed.'" *Cunningham,* 312 F.3d at 1153 (citation omitted). In *Cunningham,* we concluded that *Heck* barred the plaintiff's § 1983 claim because "there was no break between [the plaintiff's] provocative act . . . and the police response that he claim[ed] was excessive." *Id.* at 1155. We distinguished *Smithart v. Towery,* 79 F.3d 951 (9th Cir.1996), which allowed a § 1983 excessive force claim to proceed despite the fact that the plaintiff in the § 1983 action was convicted of assaulting the arresting officers. *See id.* at 952. In *Cunningham,* we specifically observed that the "factual setting" in *Smithart* was different from that in which Cunningham was involved:

The plaintiff in *Smithart* tried to use his truck to run over the sheriff and state patrolman, an act for which he was later convicted of assault. The plaintiff claimed that, after he got out of his truck, the sheriff and patrolman used excessive force to arrest him. The assault conviction and the excessive force claim did not arise from the same acts. Indeed, once he was out of the truck and without access to his "assault weapon," the officers had no need to use excessive force to subdue the plaintiff or to protect themselves. Here, however, there was no break between Cunningham's provocative act of firing on the police and the police response that he claims was excessive.

*Cunningham,* 312 F.3d at 1155 (citations omitted).

The facts in this case differ similarly from those in *Smithart.* Here, the § 148 conviction *does* arise from the same acts as those which precipitated the use of force by the officers. "Because the two are so closely interrelated, [Smith's] conviction forecloses his excessive force claim against the . . . officers." *Id.*

Smith contends that "because the officers' commands that were disobeyed *preceded* the uses of force, a finding that the officers' *response* to Mr. Smith's disobedience was excessive does not invalidate the lawfulness of the officers' commands." We are not persuaded. As in *Cunningham,* Smith's actions immediately preceded and precipitated what Smith alleges to be "excessive force," force which was used only because Smith resisted the officers' efforts to subdue and arrest him. *See Cunningham,* 312 F.3d at 1155. "Indeed, . . . the police response was a natural consequence" of Smith's defiant acts. *Id.* In contrast, *Sanford* involved two discrete incidents. The first skirmish was between Sanford and the animal control officer, for

which she was placed under arrest. The second altercation was between Sanford and a police officer, who punched her in the face while she was handcuffed. We ruled that Sanford's § 1983 action against the officer in no way challenged the validity of her conviction because the act of which she was convicted was not identified as her resistance to the officer's punch. *Sanford,* 258 F.3d at 1118–1119. In contrast, the force in this case was specifically linked to Smith's resistance. As was the case in *Cunningham,* Smith's resistance and the officers' restraint were "part of a single act ..." 312 F.3d at 1154. In such circumstances, *Heck v. Humphrey* bars relief. *See id.* at 1155.

■ *Sanford,* by limiting the California rule that invalidates arrests made with excessive force, ultimately stands for the unremarkable premise that "[e]xcessive force used after an arrest is made does not destroy the lawfulness of the arrest." *Sanford,* 258 F.3d at 1120. *Sanford* does not countenance the astounding notion that any force subsequent to the commission of an act violating § 148 may serve as the basis for a § 1983 action, even if the arrest is not yet complete.

## IV. CONCLUSION

We conclude that because of the California state courts' interpretation of Cal.Penal Code § 148 and the facts of this case, a judgment in favor of Smith would necessarily imply the invalidity of his conviction. Accordingly, his action under 42 U.S.C. § 1983 is barred by *Heck v. Humphrey,* and the district court's grant of summary judgment in favor of Defendants/Appellees is

**AFFIRMED.**

W. FLETCHER, Circuit Judge, dissenting.

Plaintiff Thomas Smith pled guilty to a violation of California Penal Code

§ 148(a)(1) and was sentenced to three years' probation. Section 148(a)(1) makes it a misdemeanor for a person to "willfully resist, delay, or obstruct any ... peace officer ... in the discharge" of his or her duties. Cal.Penal Code § 148(a)(1). Smith filed this § 1983 suit alleging excessive force by the police during the events leading up to his arrest. Smith filed suit while he was still on probation and was therefore "in custody" for purposes of habeas corpus. However, when we heard argument in this case he was no longer in custody, and habeas corpus was no longer available as a remedy.

The majority holds that Smith's § 1983 suit is barred by the Supreme Court's decision in *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). For two independently sufficient reasons, the majority is wrong as a matter of law.

First, in *Heck* the Court held that a prisoner plaintiff cannot bring a § 1983 suit if success in that suit "would necessarily imply the invalidity of his conviction or sentence." *Id.* at 487, 114 S.Ct. 2364. In that event, the plaintiff's sole remedy is habeas corpus. If, on the other hand, "the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the [§ 1983] action should be allowed to proceed[.]" *Id.* (emphasis in original). In this case, success in Smith's § 1983 suit would not "necessarily imply" or "demonstrate" the "invalidity of his conviction or sentence" under § 148(a)(1). His suit therefore "should be allowed to proceed." In holding Smith's § 1983 suit barred by *Heck,* the majority's decision directly conflicts with *Heck* itself, with our own decision in *Sanford v. Motts,* 258 F.3d 1117 (9th Cir.2001), and with the decisions of four of our sister circuits.

Second, in *Nonnette v. Small,* 316 F.3d 872 (9th Cir.2002), we held that a § 1983 suit is available to a plaintiff who, when his appeal is heard, cannot file a habeas petition because he has been released from custody. In holding that Smith's suit is barred despite the current unavailability of habeas, the majority's decision conflicts with *Nonnette.*

The majority is also wrong as a matter of policy. The decision provides a road map that will enable police effectively to eliminate many, perhaps most, § 1983 excessive force suits. Under the majority's decision, if a police department is concerned that one or more of its officers may have used excessive force, it should press charges under Cal.Penal Code § 148(a)(1) or an equivalent statute. In most cases, it will be easy to show that at some point in the encounter the would-be § 1983 plaintiff "resist[ed], delay[ed], or obstruct[ed]" a police officer in the discharge of his or her duties. If the would-be plaintiff pleads guilty to a violation of § 148(a)(1) or its equivalent in return for a probated sentence, as Smith did in this case, a § 1983 suit based on excessive force is forever barred. This is a pretty neat trick, made possible—indeed invited—by the majority's decision.

## I. Background

The facts of the encounter between Smith and the police are not seriously disputed. Smith's wife called the police to report a domestic disturbance. When the police arrived, Smith came out onto the porch of his house with his hands in his pockets. Officer Reinbolt, the first officer on the scene, instructed Smith to remove his hands from his pockets. Smith refused to comply. Instead, he swore at Officer Reinbolt, entered the house, and re-emerged with his hands still in his pockets.

Officer Reinbolt then instructed Smith to put his hands on his head and come down from the porch. Smith again refused to comply. Officer Quinn then instructed Smith to turn around and place his hands on his head. Smith again refused to comply.

After these refusals, the officers came onto the porch. They pepper-sprayed Smith, pushed him against the door, wrestled him to the ground, and instructed a police canine to bite him. Based on a tape recording made by Officer Reinbolt, we know that the entire encounter lasted five minutes or somewhat longer.

Smith pled guilty in California Superior Court to a violation of California Penal Code § 148(a)(1).[1] Section 148(a)(1) provides: "Every person who willfully resists, delays, or obstructs any … peace officer … in the discharge or attempt to discharge any duty of his or her office or employment, … shall be [guilty of a misdemeanor]." Under California case law, a person cannot be guilty of violating § 148(a)(1) if an officer is acting unlawfully because, in that event, the officer would not be discharging his or her duty. *See Susag v. City of Lake Forest,* 94 Cal. App.4th 1401, 115 Cal.Rptr.2d 269, 273–74 (2002); *People v. Olguin,* 119 Cal.App.3d 39, 173 Cal.Rptr. 663, 666 (1981).

Smith violated § 148(a)(1) at least three times before the officers came onto the porch and used force against him. He violated § 148(a)(1) when he refused to take his hands out of his pockets, when he refused to put his hands on his head and come down off the porch, and, finally, when he refused to put his hands on his head and turn around. In all three instances, Officers Reinbolt and Quinn issued lawful commands within the proper

---

1. Smith also pled guilty to spousal battery under California Penal Code § 243(e). The consequences of that conviction are not at issue in this case.

scope of their duties, and in all three instances Smith resisted, delayed, or obstructed the officers.

Defendants do not dispute that Smith violated § 148(a)(1) before the officers came onto the porch. Officer Quinn stated in his deposition that, based on his training and experience, Smith had violated § 148(a)(1) by the time he had approached the porch.

Q: As you approached Mr. Smith, what was he doing?

A [by Officer Quinn]: Standing on or near his porch.

Q: Did he make any threats of injury directed toward you?

A: No.

Q: Did you hear him make any threats of injury directed toward anybody?

A: No.

. . .

Q: When you were approaching Mr. Smith, he was still in disobedience of the officers' commands; is that right?

A: Sure.

. . .

Q: . . . Based on your training, what are the elements for making an arrest for a violation of Section 148 of the Penal Code?

A: Somebody has to obstruct, delay, or resist a police officer in the performance of their duties.

Q: Were the officers engaged in the performance of their duties as they were giving command to Mr. Smith to put his hands on his head and step off the porch?

A: Yes.

Q: Was Mr. Smith's noncompliance with those commands obstructing or delaying the officers in the performance of their duties?

A: Yes.

Q: So based on your training and experience, Mr. Smith—that is, by the time that you're approaching him on the porch—Mr. Smith had violated Penal Code Section 148.

A: Sure.

At oral argument, defense counsel conceded that Smith had violated § 148(a)(1) before the officers had come onto the porch.

On October 27, 1999, Smith pled guilty to a violation of § 148(a)(1) without pleading to any specific set of facts. Smith was sentenced to 36 months' probation. On October 16, 2000, while he was still on probation and was therefore still in "custody" for purposes of habeas, Smith filed this § 1983 suit. *Cervantes v. Walker*, 589 F.2d 424, 425 n. 1 (9th Cir.1978) (describing "custody" under 28 U.S.C. § 2254). On July 19, 2002, the district court granted summary judgment to defendants. During the pendency of his appeal to this court, Smith's probation ended. Because Smith is no longer in custody, he cannot now file a petition for habeas corpus challenging his conviction under § 148(a)(1).

## II. "Necessarily Imply" or "Demonstrate" the "Invalidity of a Conviction or Sentence"

As I will elaborate below, the majority misunderstands the crime of which Smith was convicted and draws an improper inference of what Smith admitted by his guilty plea. Further, the majority misreads our decision in *Cunningham v. Gates*, 312 F.3d 1148 (9th Cir.2002), to mean that Smith's § 1983 suit is barred by *Heck* because Smith's violation of § 148(a)(1) and the officers' use of force were not "two discrete incidents." Maj. op. at 1144. The majority's decision conflicts with *Heck* itself, with our recent decision in *Sanford v. Motts*, and with decisions of the Third, Seventh, Tenth and Eleventh Circuits.

## A. *Heck v. Humphrey*

The question under *Heck* is whether success in Smith's § 1983 suit would "necessarily imply" or "demonstrate" the invalidity of his conviction or sentence under § 148(a)(1). The undisputed factual narrative makes clear that it would not. For a § 148(a)(1) conviction to be valid, a person must have "resist[ed], delay[ed], or obstruct[ed]" a police officer in the lawful exercise of his or her duties. If a police officer uses excessive force, he or she is not acting lawfully. *See Susag,* 115 Cal. Rptr.2d at 273–74; *Olguin,* 173 Cal.Rptr. at 666. A person therefore cannot validly be convicted under § 148(a)(1) if the officer used excessive force while the person resisted, delayed, or obstructed the officer.

If Smith had pled guilty to § 148(a)(1) based on his behavior after the officers came onto the porch to subdue him, his suit would be barred by *Heck.*[2] This is so because if Smith were successful in his § 1983 suit, that would necessarily mean that the officers were using excessive force to subdue him and were therefore acting unlawfully. If they were acting unlawfully, Smith's conviction under § 148(a)(1) was invalid.

However, if Smith pled guilty based on his behavior *before* the officers came onto the porch, his suit would not be barred. This is so because if Smith were successful in his § 1983 suit, that success would be based on excessive force that occurred after Smith had already violated § 148(a)(1). In that circumstance, the success of Smith's § 1983 suit would not necessarily imply or demonstrate the invalidity of his conviction or sentence under § 148(a)(1), for the conviction would be based on behavior that took place while Smith stood alone and untouched on his porch.

The facts that are the basis for Smith's plea of guilty to a violation of § 148(a)(1) were not specified in the plea. It is therefore entirely possible that Smith pled guilty to a violation of § 148(a)(1) based on his behavior before the officers came onto the porch. If that is so, a successful § 1983 suit based on excessive force after the officers came on the porch is entirely consistent with a valid conviction under § 148(a)(1). The majority decision thus directly conflicts with *Heck* in holding that Smith's § 1983 suit is barred.

## B. *Sanford v. Motts*

The majority's decision conflicts not only with *Heck* itself, but also with our decision in *Sanford v. Motts,* 258 F.3d 1117 (9th Cir.2001). In *Sanford,* we held that a successful § 1983 suit based on excessive force did not necessarily imply the invalidity of the plaintiff's conviction under § 148(a)(1). Plaintiff Sanford was involved in an altercation with an animal control officer. After she was handcuffed, Sanford verbally attempted to interfere with the officer's arrest of her boyfriend. The officer then struck her in the face. Sanford pled *nolo contendere* to violating § 148(a)(1) and, like Smith, was sentenced to three years' probation.

As in our case, nothing in the record revealed the factual basis of Sanford's plea. We explained that if the officer's excessive force occurred "subsequent to the time Sanford interfered with [the officer's] duty, success in her section 1983 claim [would] not invalidate her conviction." *Id.* We held that defendants had not established their *Heck* defense because they had not shown the factual basis of Sanford's plea. We held that there was no *Heck* bar even though Sanford's interfer-

---

**2.** I assume, for purposes of this statement, that Smith does not have an alternative basis for proceeding under § 1983.

ence with the officer and the officer's application of allegedly excessive force were part of a continuous sequence of events, even though Sanford's interference provoked the officer's use of force, and even though the interference and the force were separated by only a few moments.

In finding no *Heck* bar in *Sanford,* we explained that if the officer "used excessive force subsequent to the time Sanford interfered with his duty, success in her § 1983 claim will not invalidate her conviction." *Id.* at 1120. The same is true here. When Smith stood on his porch, alone and untouched, he violated § 148(a)(1) by refusing to obey the officers' commands. It is uncontested that at that time the officers were acting lawfully and Smith unlawfully. A finding in Smith's § 1983 suit that the officers later used excessive force when they came onto the porch to subdue Smith would have no effect on his conviction under § 148(a)(1). The majority opinion thus directly conflicts with *Sanford* in holding that Smith's § 1983 suit is barred.

### C. Decisions of Other Circuits

The majority decision also directly conflicts with decisions of four of our sister circuits. In *Martinez v. City of Albuquerque,* 184 F.3d 1123 (10th Cir.1999), plaintiff Martinez had solicited sex from a police officer posing as a prostitute. Martinez fled briefly from the police in his car. He then stopped his car, locked the doors, rolled down the window, and protested to the police that he had done nothing wrong. Martinez refused a command to get out of the car. One of the officers reached in and tried to unlock the door. Martinez rolled up the window into the officer's arm. Another officer then struck Martinez in the face and unlocked the car. The officers then arrested Martinez. The entire incident lasted two to three minutes.

After a bench trial in state court, Martinez was found guilty of violating New Mexico Statute § 30–22–1. There were two subparts of the statute under which Martinez could have been convicted. The first, subpart B, prohibits "resisting, evading or obstructing an officer [by] intentionally fleeing, [or] attempting to evade[.]" N.M. Stat. Ann. § 30–22–1B. The Tenth Circuit held that if Martinez had been convicted under this subpart of the statute, it was because he intentionally fled in his car. The success of his § 1983 suit "simply had no bearing on his conviction," *id.* at 1126, because Martinez had fled before any force was used against him.

The second subpart under which Martinez could have been convicted, subpart D, prohibits "resisting, evading or obstructing an officer [by] resisting or abusing any ... police officer in the lawful discharge of his duties." N.M. Stat. Ann. § 30–22–1D. If Martinez was convicted under this subpart, it was because he refused to get out of the car and closed the car window on the officer's arm. The Tenth Circuit explained that a successful § 1983 excessive force suit would not necessarily imply the invalidity of Martinez's conviction under this subpart either:

> [W]hether Martinez resisted arrest by failing to heed instructions and closing his vehicle's window on the officer's arm is ... a question separate and distinct from whether the police officers exercised excessive or unreasonable force in effectuating his arrest. The state court's finding that Martinez resisted a lawful arrest, even if based on § 30–22–1D, may coexist with a finding that the police officers used excessive force to subdue him.

*Id.* at 1127.

Both the New Mexico statute and California Penal Code § 148(a)(1) require as an element of the offense that the police officer be engaged in the lawful discharge of his duties. *Compare* N.M. Stat. Ann.

§ 30–22–1D, and *State v. Prince,* 126 N.M. 547, 972 P.2d 859, 862 (1998), *with People v. Simons,* 42 Cal.App.4th 1100, 50 Cal. Rptr.2d 351, 355 (1996). The alleged use of excessive force against both Smith and Martinez immediately followed their resistance or obstruction of the police in the lawful discharge of their duties. Martinez's refusal to exit his car, his rolling up the window, and the officer's striking him, were all part of a continuous sequence of events separated in time by only moments.

Smith's refusal to obey the commands of Officers Reinbolt and Quinn before they came onto the porch and the officers' use of force on Smith after they came onto the porch were part of a continuous sequence of events, just as in *Martinez.* Further, Smith's refusal and the officers' use of force were separated by only a short time, just as in *Martinez.* Indeed, in *Martinez,* and probably in *Sanford,* the elapsed time between the resistance and the use of force was less than in Smith's case.

In *Nelson v. Jashurek,* 109 F.3d 142 (3d Cir.1997), the Third Circuit permitted plaintiff Nelson to proceed with his § 1983 excessive force suit despite his state court conviction under Pennsylvania's statute governing resisting arrest. The statute provides that a person is guilty of resisting arrest if "with the intent of preventing a public servant from effecting a lawful arrest [he] . . . employs means justifying or requiring *substantial force* to overcome [his] resistance." 18 Pa. Cons.Stat. Ann. § 5104. (Emphasis added.) Nelson had run away, disobeying a police officer's order to stop. The officer caught Nelson and, after a struggle, subdued him. Nelson then sat down in a chair. When Nelson got up, the officer hit him with a flashlight and, according to Nelson, used excessive force to subdue him.

In analyzing the *Heck* defense, the Third Circuit carefully analyzed § 5104. Since § 5104 specified only that the defen-

dant must have "employ[ed] means justifying or requiring *substantial* force to overcome [his] resistance," and since Nelson alleged *excessive* rather than substantial force, a successful § 1983 suit "would not throw the validity of the judgment of conviction in the criminal case into doubt." *Id.* at 145. The court therefore allowed Nelson's § 1983 suit to go forward. In *Nelson,* as in *Sanford, Martinez* and our case, Nelson's actions that constituted a violation of the criminal statute and the officer's use of allegedly excessive force were part of a continuous sequence of events and were separated only by a short period of time.

In *Willingham v. Loughnan,* 261 F.3d 1178 (11th Cir.2001), *cert. granted and judgment vacated on other grounds,* 537 U.S. 801, 123 S.Ct. 68, 154 L.Ed.2d 2 (2002), plaintiff Willingham was convicted by a state court jury of attempted second-degree murder of one police officer and battery of another police officer. Willingham brought a § 1983 excessive force suit against the officers and obtained a substantial jury verdict. The actions that were the basis for Willingham's criminal conviction and the § 1983 verdict overlapped in time and were part of the same sequence of events. The Eleventh Circuit reviewed the evidence presented in the criminal trial and held that "a finding of excessive force by the jury in this civil case does not necessarily call into question the validity of [Willingham's] criminal conviction." 261 F.3d at 1183. The court therefore refused to hold that Willingham's § 1983 suit was barred by *Heck.* Even more than in *Sanford, Martinez, Nelson* and our case, the facts underlying Willingham's criminal conviction and his § 1983 verdict were not "discrete incidents." Maj. op. at 1143.

Finally, in *Robinson v. Doe,* 272 F.3d 921 (7th Cir.2001), plaintiff Robinson was

convicted of a drug offense, based in part on evidence seized in a search that accompanied his arrest. Robinson brought a § 1983 suit alleging excessive force during the arrest. If the arrest had been unlawful, the evidence would have been unlawfully seized, which would have necessarily implied the invalidity of Robinson's criminal conviction. The court nevertheless held that *Heck* did not bar Robinson's § 1983 suit:

> Police might well use excessive force in effecting a perfectly lawful arrest. And so a claim of excessive force in making an arrest does not require overturning the plaintiff's conviction even though the conviction was based in part on a determination that the arrest itself was lawful.

*Id.* at 923. See also *Wells v. Bonner,* 45 F.3d 90, 95 (5th Cir.1995) (assuming without deciding that a finding of excessive force would not imply the invalidity of the plaintiff's conviction for resisting a search).

### D. Mistakes in the Majority Opinion

The majority opinion makes two crucial mistakes. First, it misunderstands the crime of which Smith was convicted, and as a result draws an incorrect inference from his guilty plea. Second, it misreads our opinion in *Cunningham v. Gates,* 312 F.3d 1148 (9th Cir.2002), to require that a § 1983 plaintiff show that his criminal conviction and his § 1983 excessive force suit be based on "two discrete incidents." Maj. op. at 1144.

First, the majority misunderstands California law. It concludes from Smith's guilty plea that he admitted his arrest was lawful. That would be true if Smith had pled guilty to resisting arrest. But Smith did not plead guilty to resisting arrest. Rather, he pled guilty to violating § 148(a)(1).

The majority's mistake stems from a confusion about what is prohibited by § 148(a)(1). A violation of § 148(a)(1) is sometimes called, in shorthand, "resisting arrest." *See, e.g., Hernandez v. City of Los Angeles,* 624 F.2d 935, 936 (9th Cir. 1980) ("Hernandez was tried ... on charges of violating ... § 148 (resisting arrest)[.]"). If § 148(a)(1) prohibited "resisting arrest," a guilty plea would, indeed, admit that officers were acting lawfully when they performed the arrest, for a person can violate § 148(a)(1) only if officers are acting lawfully. But § 148(a)(1) does not prohibit "resisting arrest." Rather, it prohibits "resist[ing], delay[ing], or obstruct[ing]" an officer in the performance of his or her duties. By pleading guilty, Smith necessarily admitted that the officers were acting lawfully when he violated § 148(a)(1). But defendants concede that Smith violated § 148(a)(1) before the officers came onto the porch. By his plea, Smith thus admitted only that the officers were acting lawfully in giving him commands while he stood alone and untouched.

Second, the majority reads *Cunningham v. Gates* to require that the facts underlying the crime and the use of excessive force be "two discrete incidents." Maj. op. at 1143. The majority particularly relies on a sentence in *Cunningham* stating that Cunningham's § 1983 suit was barred by *Heck* because "there was no break between Cunningham's provocative act of firing on the police and the police response that he claims was excessive." *Cunningham,* 312 F.3d at 1155; *See* Maj. op. at 1143 (quoting *Cunningham* ). The majority misreads this sentence to mean that Smith's acts and the officers' response must have been "two discrete incidents" for his § 1983 suit to go forward under *Heck.* Maj. op. at 1144.

The majority misreads *Cunningham* because it fails to examine the crime for which Cunningham was convicted. Cunningham and a partner named Soly had

robbed a liquor store. Police officers then exchanged gunfire with Cunningham and Soly, severely injuring Cunningham and killing Soly. Cunningham was convicted by a jury of attempted murder (of the police), felony murder (of Soly), robbery and burglary. Cunningham thereafter brought a § 1983 excessive force suit against the officers.

One of Cunningham's § 1983 claims was that even though he had provoked the officers by shooting at them, the officers had responded excessively to the provocation. We concluded that success on this claim would necessarily be inconsistent with Cunningham's conviction for felony murder, and that the claim was therefore barred by *Heck.* We based our conclusion on the jury instruction for felony murder, which had required the jury to find that Cunningham had "committed an intentional provocative act," that the officer had killed Soly "in response to the provocative act," and that Cunningham's provocative act was a "cause of [Soly's] death." 312 F.3d at 1152. We explained the inconsistency between Cunningham's § 1983 claim and the jury's guilty verdict in a paragraph from which the majority has taken only the first sentence:

> [T]here was no break between Cunningham's provocative act of firing on the police and the police response that he claims was excessive. Indeed, in convicting Cunningham of felony murder, the jury concluded that the police response was a natural consequence of Cunningham's provocative act. Because the two are so closely interrelated, Cunningham's conviction forecloses his excessive force claim against the . . . officers.

*Id.* at 1155 (emphasis indicates sentence quoted by the majority).

Once the sentence is understood in context, it is clear that our requirement in *Cunningham* that there have been a "break" between Cunningham's provocative act and the police response was dictated by the crime of which Cunningham was convicted. In his § 1983 claim, Cunningham had asserted that although he had provoked the response by the officers, the response had been excessive. In order for his § 1983 claim to have been successful, there must have been an insufficient link between the provocation and the response, such that the response by the officers went beyond the provocation. We held that if there had been an insufficient link—a "break" between the provocation and the response, this would necessarily have been inconsistent with the jury's verdict that Cunningham was guilty of felony murder, for the felony murder instruction specifically required a causal connection between Cunningham's provocation and the officers' deadly response.

The "break" requirement of *Cunningham*—the requirement that there be, in the words of the majority, "two discrete incidents"—is not a general requirement for § 1983 excessive force suits. Rather, it is a requirement specifically tailored to Cunningham's conviction for felony murder. If it were a general requirement that there be "two separate incidents," our decision in *Sanford,* and our sister circuits' decisions in *Martinez, Nelson,* and *Willingham* were all wrongly decided, for there was no "break"—in time or causation—in any of those cases.

Even though *Sanford* had been decided only a year and a half before *Cunningham,* the analysis in *Cunningham,* dealing with a conviction for felony murder, and the analysis in *Sanford,* dealing with a conviction under § 148(a)(1), are so distinct from one another that we saw no need in *Cunningham* even to discuss *Sanford.* Our case is, of course, a *Sanford*-type case, in which the § 1983 plaintiff has been convicted under § 148(a)(1). *Cun-*

*ningham* is as irrelevant to the analysis in our case as it was to the analysis in *Sanford.*

## E. Conclusion

In the end, this is a simple case. As an analytic matter, we have already decided it in *Sanford*, and our sister circuits have already decided it in *Martinez, Nelson, Willingham*, and *Robinson.* Smith violated § 148(a)(1) when he disobeyed the lawful commands of Officers Reinbolt and Quinn as he stood alone and untouched on his porch. Smith may or may not be able to succeed on the merits of his § 1983 suit, based on what the officers did after they came onto the porch. But success in that suit would be in no way inconsistent with his guilty plea under § 148(a)(1). That is, success in his § 1983 suit would not "necessarily imply" or "demonstrate" the "invalidity of his conviction or sentence" under § 148(a)(1).

## III. Unavailability of Habeas Corpus

When we heard Smith's appeal, his three-year probation had ended and he was no longer in custody. Because Smith is not in custody, he cannot file a petition for habeas corpus under 28 U.S.C. § 2254. In *Nonnette v. Small*, 316 F.3d 872 (9th Cir.2002), we held that a § 1983 plaintiff in that position is not barred by *Heck.* Even if the majority were correct that Smith's § 1983 suit would "necessarily imply" or "demonstrate" the invalidity of Smith's conviction under § 148(a)(1), it is nonetheless required by *Nonnette* to allow Smith's suit to go forward.

We noted in *Nonnette* that "there is language in *Heck* suggesting that the prior overturning of any underlying conviction is invariably a prerequisite for a § 1983 action that implies the conviction's invalidity." *Id.* at 876. But we concluded that Justice Souter's concurrence and Justice Stevens's dissent in *Spencer v. Kemna*, 523 U.S. 1, 118 S.Ct. 978, 140 L.Ed.2d 43

(1998), indicate that this would be an incorrect reading of *Heck. Nonnette*, 316 F.3d at 877–78; *see* 523 U.S. at 19, 118 S.Ct. 978 (Souter, J., concurring); *id.* at 25 n. 8, 118 S.Ct. 978 (Stevens, J., dissenting). Informed by Justice Souter and Stevens's opinions in *Spencer*, we held in *Nonnette* that a plaintiff who can no longer challenge his conviction because of release from custody is not barred by *Heck* from bringing a suit under § 1983. We joined the Second and Seventh Circuits in so holding. *See Huang v. Johnson*, 251 F.3d 65, 75 (2d Cir.2001); *Carr v. O'Leary*, 167 F.3d 1124, 1127 (7th Cir.1999).

The plaintiff in *Nonnette* had been in custody, and thus could have filed a petition for habeas corpus, at the time he filed his § 1983 suit. Only while his § 1983 suit was on appeal was he released from custody, and only then did habeas become unavailable. We held in *Nonnette* that even in this circumstance a § 1983 suit may be pursued. *Nonnette* is on all fours with this case. When Smith filed his § 1983 suit, he was still on probation and therefore still in custody for purposes of habeas corpus. While his case was on appeal to us, his probation was completed and he was released from custody. Because he is no longer in custody, and because habeas corpus is not available to him, our holding in *Nonnette* requires that he be allowed to proceed with his suit under § 1983.

## IV. A Road Map for Police

Not only is the majority wrong as a matter of law. It is also grievously wrong as a matter of policy. The majority has provided a road map that will allow police officers and their departments to avoid many, perhaps most, excessive force cases. If a department is concerned that one or more of its officers may have used excessive force, the majority opinion instructs it to press charges under Cal.Penal Code

§ 148(a)(1) or an equivalent statute. In most cases where there is a possible § 1983 excessive force suit, it will be child's play to obtain a conviction for a violation of § 148(a)(1) or its equivalent. In some of these cases, the would-be plaintiff may be charged and convicted only because the officers and their department want to avoid a § 1983 suit. Many, perhaps most, defendants will be willing to plead guilty to a violation of § 148(a)(1) in return for a probated sentence. Indeed, I cannot help noticing that the plaintiffs in *Sanders* and in this case both pled guilty to violating § 148(a)(1), and that they both received sentences of three years' probation.

If the majority opinion stands, a plea bargain resulting in a conviction under § 148(a)(1) will forever bar a § 1983 excessive force suit. This is a pretty neat trick, but it is not much of a bargain. On one side, the police officers are able to avoid a § 1983 suit for excessive force. On the other, the would-be (and now-barred) § 1983 plaintiff gets a conviction under § 148(a)(1).

### V.   Conclusion

The majority decision is inconsistent with *Heck* and with our decision in *Sanford;* it is inconsistent with decisions by the Third, Seventh, Tenth, and Eleventh Circuits; and it is inconsistent with our decision in *Nonnette.* The majority decision is also an open invitation to police departments to use charges and plea bargains under § 148(a)(1), or its equivalent, to avoid § 1983 excessive force suits.

I dissent.