**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 16 2005**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DEENA TANBERG, and VALERIE
ORTEGA,

      Plaintiffs-Appellants,

    v.

OFFICER TOM SHOLTIS, of the
Albuquerque Police Department, in his
official and individual capacities;
CITY OF ALBUQUERQUE, a
municipal corporation,

      Defendants-Appellees.

No. 03-2231

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. NO. CIV-02-0348 LCS/LFG)**

---

Jason Bowles, (Mark D. Jarmie with him on the brief) Sharp, Jarmie & Bowles,
Albuquerque, New Mexico, for Plaintiffs-Appellants.

Richard A. Sandoval, (Kenneth C. Downes with him on the brief) Downes &
Sandoval, P.C., Albuquerque, New Mexico, for Defendant-Appellee Tom Sholtis.

Kathryn Levy, Deputy City Attorney, City of Albuquerque, Albuquerque, New
Mexico, on the brief, for Defendant-Appellee City of Albuquerque.

---

Before **LUCERO** , **McCONNELL** , and **ANDERSON** , Circuit Judges.

---

**McCONNELL,** Circuit Judge.

_____

Following their arrest for being in a municipal park after it was closed, the Plaintiffs, Deena Tanberg and Valerie Ortega, brought suit asserting state and federal claims of false arrest, a federal claim of excessive force, and state law claims of assault and battery against the Defendants, Officer Tom Sholtis and the City of Albuquerque. After ordering a bifurcated trial, the district court granted Officer Sholtis's motion for judgment as a matter of law with regard to Plaintiffs' state and federal claims for false arrest, and the jury found for Officer Sholtis on Plaintiffs' claims of excessive force and assault and battery. Plaintiffs appeal the trial court's judgment as a matter of law dismissing their state and federal false arrest claims, the denial of their motion for a new trial, and evidentiary rulings made during trial. We **AFFIRM.**

## I. Factual Background

Following a long day's work at the Albuquerque Balloon Fiesta, Ms. Tanberg and Ms. Ortega went to a bar to relax. Approximately three hours, three beers, and two shots of hard liquor (each) later, they left the bar and began the drive home. The two women stopped to buy bread for Ms. Ortega's grandmother and then drove to a park to take a walk. And so, armed only with a loaf of bread for grandmother, Plaintiffs entered the woods of Bianchetti Park. It was after 2:00 in the morning. Plaintiffs encountered several teenagers in the park and

-2-

engaged in desultory conversation with them until the teenagers began to smoke marijuana, at which point Plaintiffs continued their walk through the park. What Plaintiffs apparently did not encounter was a sign listing the park's hours of operation; the park had closed at 10:00 p.m.

Meanwhile, at approximately 2:30 a.m., Officer Sholtis arrived at the park in a marked Albuquerque police car. Officer Sholtis was off-duty, but was wearing an authorized duty uniform. Having noticed two vehicles parked adjacent to the park, and aware that the park was closed, Officer Sholtis turned on his spotlight and scanned the park, observing a group of people by the picnic tables. Officer Sholtis turned on his emergency flashers and used his public address system to order everyone in the park to come toward his vehicle. Compliance with this instruction was something less than ideal. The teenagers scattered, motivating Officer Sholtis to make a second announcement on his public address system ordering everyone to come to his car. The second announcement had no more effect than the first, except on a sole teenager, who, less wily than her fellows, ran up to and entered the car next to Officer Sholtis's patrol car. The car was already occupied by several other teenagers. Officer Sholtis, unaware that the young woman had been using marijuana, informed the occupants of the car that the park was closed and advised them to go home, which they did.

Ms. Tanberg and Ms. Ortega neither dispersed as effectively as the majority of the teenagers nor approached the patrol car. Officer Sholtis spotted them walking rapidly away from him by the basketball court. Officer Sholtis drove his patrol car toward them, stopped, made yet another announcement on his public address system, and exited his vehicle. Ms. Ortega began to walk toward the patrol car in response to the command to do so, but Ms. Tanberg stepped off the path and attempted to hide behind some trees. Ms. Tanberg's uncooperative behavior caused Officer Sholtis to fear for his own safety, and he ordered both women to sit down in front of his patrol car. Neither did so. Officer Sholtis then identified himself as a police officer and instructed Ms. Tanberg to sit down or be put in handcuffs. Ms. Tanberg refused and began to walk past Officer Sholtis and away from his patrol car. Concerned that Ms. Tanberg was leaving the area, and that he would have to turn his back on one woman to pursue the other, Officer Sholtis attempted to handcuff Ms. Tanberg, who resisted his efforts. Officer Sholtis then used a "facedown stabilization" technique to force Ms. Tanberg to the ground, where, despite her continued resistance, he succeeded in handcuffing her. Aple. Br. 9. Ms. Tanberg's glasses were dislodged and broken during the arrest. Officer Sholtis then handcuffed Ms. Ortega without further incident.

Officer Sholtis and his arrestees remained in the park for some time, where the women were ultimately examined by emergency medical technicians from the

-4-

Albuquerque Fire Department.  The women were later transported to a police substation where they were kept, handcuffed, in holding cells.  While the parties' accounts of the behavior of Ms. Tanberg and Ms. Ortega during this period differ markedly, it is agreed that Ms. Tanberg kicked her cell door a few times and Ms. Ortega threw a chair at the cell wall.  Ms. Tanberg and Ms. Sholtis were then transported to a county detention center, and finally to a hospital.  At some point in the evening, Ms. Tanberg sustained an avulsion fracture of her right arm.  Due to a twisting motion, the ligaments in her right elbow had pulled a small piece of bone away from the remainder of the bone.     Plaintiffs insist that Officer Sholtis was responsible for the injury to Ms. Tanberg's arm; testimony by Kim Kearney, a sergeant with the APD, suggested that Ms. Tanberg's injury may have been self-inflicted.

Plaintiffs were charged with resisting arrest, disobeying a police officer, and being in a park after closing.  The district attorney ultimately dropped these charges and Plaintiffs filed suit against Officer Sholtis and the City of Albuquerque.

**II. Analysis**

*A.  Directed Verdict on State False Arrest Claims*

During trial the court granted Officer Sholtis's motion for judgment as a matter of law on Plaintiffs' state and federal claims for false arrest.  Plaintiffs

argue that the trial court erred, and that when Albuquerque Police Department standard operating procedures (SOPs) and the subjective mental states of everyone involved are taken into account, Officer Sholtis lacked probable cause to arrest them. The Federal Rules of Civil Procedure provide for judgment as a matter of law "[i]f during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. 50(a)(1). We review a district court's grant of a motion for directed verdict de novo. *Fry v. Board of County Comm'rs*, 7 F.3d 936, 938 (10th Cir. 1993).

Plaintiffs contend that they raised a number of factual disputes at trial which precluded the grant of a motion for judgment as a matter of law. In Plaintiffs' formulation, Officer Sholtis's motives for arresting Plaintiffs, Plaintiffs' ignorance of park closing times, and the requirements of the Albuquerque Police Department (APD) SOPs regarding off-duty arrests raised disputes concerning the legality of the arrest that should have been submitted to the jury. We disagree. New Mexico law permits a police officer to make a warrantless arrest for a misdemeanor so long as the officer has probable cause to believe the offense has occurred in his presence. *State v. Salas*, 986 P.2d 482, 486 (N.M. 1999). Since the factual disputes Plaintiffs raise do not affect the determination of whether the arrest was supported by probable cause, the trial

-6-

court was correct to grant Officer Sholtis's motion for judgment as a matter of law.

Officer Sholtis apprehended the Plaintiffs for resisting arrest, disobeying a police officer, and being in the park after it was closed. Plaintiffs attach considerable significance to the fact that Officer Sholtis's "main reason" for arresting them, as revealed in his trial testimony, was their failure to obey his commands, not their presence in the park. Plaintiffs argue that Officer Sholtis's motivations affect the lawfulness of the arrest because it is not clear that Plaintiffs failed to obey his commands. Thus, Plaintiffs contend, there was a legally sufficient evidentiary basis for a reasonable jury to find for them on their false arrest claims, precluding a grant of judgment as a matter of law. This theory is tenable only if the lawfulness of an arrest depends on whether the arresting officer had a defensible primary motivation for making an arrest. It does not.

The New Mexico Supreme Court has considered the question whether a warrantless arrest depends for its validity on the arresting officer's perfect understanding of the proper grounds for the arrest and has concluded that it does not. In *State v. Luna*, 606 P.2d 183, 187 (N.M. 1980), *abrogated on other grounds*, *Horton v. California*, 496 U.S. 128 (1990), a police officer arrested the defendant for violating a municipal ordinance prohibiting minors from allowing themselves to be served alcohol when unaccompanied by a parent. The defendant

argued that the officer had no reasonable grounds to believe he had violated the ordinance in question, and while the court agreed with the defendant on this point, it nevertheless upheld the validity of the arrest. *Id.* at 188. The officer had observed sufficient evidence of the misdemeanors of exhibition driving and driving while intoxicated to provide him with reasonable grounds to arrest the defendant on those bases, and "where there are reasonable grounds supporting the warrantless arrest of a person for the commission of a misdemeanor, the arrest is not invalidated because the officer gave the wrong reasons for the arrest." *Id*. at 187. If an officer's entirely mistaken understanding of which law has been broken does not render that arrest unlawful, so long as the officer did observe an offense for which arrest is permitted, the distinction between Officer Sholtis's primary, secondary, and even tertiary motivations cannot affect the lawfulness of the arrest.

Under the *Luna* rule, a warrantless misdemeanor arrest is valid if the officer has at least one valid ground justifying it. The most straightforward basis on which Officer Sholtis could have arrested Plaintiffs was their violation of the municipal ordinance setting the operating hours for Albuquerque public parks. Under New Mexico law, a police officer may make a warrantless arrest for a misdemeanor if he has probable cause to believe the offense occurred in his

presence. [1] *Boone v. State*, 731 P.2d 366, 369 (N.M. 1987); *City of Roswell v. Mayer*, 433 P.2d 757, 758-59 (N.M. 1967); *Cave v. Cooley*, 152 P.2d 886, 889-90 (N.M. 1944).

An officer has probable cause to believe a misdemeanor is taking place in his presence "when the facts and circumstances as observed by the officer through the officer's senses are sufficient to warrant an officer of reasonable caution to believe that an offense is occurring." *State v. Salas*, 986 P.2d 482, 486 (N.M. App. 1999). The Albuquerque ordinance governing the operation of public parks provides that parks close at the time posted or no later than midnight. Am. Ord. 27-1991 § 10-1-1-10.[2] Bianchetti Park closed at 10:00 p.m., and Officer Sholtis encountered Plaintiffs in the park at 2:30 a.m. The facts and circumstances observed by Officer Sholtis provided probable cause to believe that Plaintiffs were committing the offense of being in a municipal park after closing, thus permitting him to make a valid arrest.

Faced with what appears to be a perfectly clear violation of a perfectly straightforward prohibition, Plaintiffs attempt to complicate matters by reading a

---

[1] New Mexico law categorizes violations of municipal ordinances as petty misdemeanors. *State v. Luna*, 606 P.2d 183, 187 (N.M. 1980); N.M.S.A. §§ 3-17-1 & 30-1-6(C).

[2] Violations of the Ordinance are subject to the general penalty provisions of the Albuquerque code: a fine not exceeding $500, imprisonment not exceeding 90 days, or both. Am. Ord. 27-1991 §§ 10-1-1-99 & 1-1-99.

specific intent requirement into the ordinance. In order to violate the ordinance, Plaintiffs maintain, one must be in a park after closing and know that the park is closed. Plaintiffs reason that if knowledge of the park's closing is necessary for a violation of the ordinance, an officer does not have probable cause to arrest someone for a violation of the ordinance without first ensuring those present know the park is closed. The ordinance does not require specific intent for a violation: "No person shall remain in, occupy, or use any park in the city which is closed to public use." Am. Ord. 27-1991 § 10-1-1-10(A). Plaintiffs confess that they have found "no specific New Mexico law" suggesting that the ordinance has a specific intent requirement, but maintain that their expert's comparison of the ordinance to a typical type of trespass offense requires us to engraft such a requirement onto the language of the ordinance. Aplt. Rep. Br. 6-7.

Plaintiffs' first argument in support of a specific intent requirement is that their expert drew an analogy between the ordinance and other trespass-type offenses. While criminal trespass under New Mexico law can, under some circumstances, require knowledge that the trespasser does not have permission to be on the land, New Mexico law also defines other trespass-type offenses that require knowledge only of the trespasser's actions, not of their illegality.[3] The

---

[3] The definitions of various trespass offenses demonstrate that the New Mexico legislature distinguishes between offenses for which knowledge only of
(continued...)

Ordinance does not contain a specific intent requirement, stating only "[n]o person shall remain in, occupy, or use any park in the city which is closed to public use." Am. Ord. § 10-1-1-10. The lack of a specific intent requirement in the statutory definition of the crime means that this is a general intent offense. *See State v. Campos*, 921 P.2d 1266, 1277 (N.M. 1996) ("a general-intent crime is one for which no additional intent to accomplish a further goal is specified.") Under New Mexico law general intent "requires only that the jury find the defendant intentionally committed the acts that the statute declares unlawful." *State v. Dunsmore*, 891 P.2d 572, 574 (N.M. App. 1995). Plaintiffs do not contend that they did not know the time or their location, or that they did not act intentionally in being at the park at that time. Plaintiffs intended their actions and understood the facts that made those actions illegal, and that is all that is required to violate the Ordinance.

Finally, Plaintiffs argue that Officer Sholtis's alleged violation of the APD SOPs rendered his actions a false arrest under state law. The SOPs provide that

---

[3](...continued)
one's actions is required, and offenses for which knowledge of illegality is required. For example, criminal trespass "consists of knowingly entering or remaining upon posted private property without possessing written permission from the owner or person in control of the land." N.M. Stat. Ann. § 30-14-1(A). On unposted lands New Mexico law requires actual knowledge: "criminal trespass also consists of knowingly entering or remaining upon the unposted lands of another knowing that such consent to enter or remain is denied or withdrawn by the owner or occupant thereof." *Id.* at § 30-14-1-(B).

-11-

an off-duty police officer may make an arrest only when "[t]here is an immediate need for the prevention of a crime or apprehension of a suspect." APD SOP § 2-15-2(B). Plaintiffs argue that Officer Sholtis violated this provision of the SOPs and that "no reasonable off-duty police officer would have believed that he had cause to arrest Plaintiffs under the circumstances." Aplt. Br. 35 n.1.

Plaintiffs' suggestion conflates the requirements for a valid arrest under state law with the standards for a proper arrest under the regulations of one agency in one municipality. If New Mexico law made the reasonableness of an arrest turn on compliance with SOPs, Plaintiffs' argument might be persuasive. But it is the existence of probable cause, rather than compliance with the SOPs, that makes a warrantless arrest valid under New Mexico law. *Salas*, 986 P.2d at 486. Probable cause exists when the facts and circumstances lead a reasonably prudent officer to believe an offense is occurring. *Id.* That the SOPs might require an officer to refrain from making an arrest under these facts does not eliminate the existence of probable cause. Thus, in light of our conclusion above that Officer Sholtis had probable cause to arrest Plaintiffs, we cannot conclude that his actions were a false arrest under New Mexico law, even assuming he violated the APD SOPs.

B. *Qualified Immunity and Directed Verdict on Federal False Arrest Claims*

Plaintiffs also contend the district court erred in granting Officer Sholtis's

motion for a directed verdict on their § 1983 claim on the basis of qualified immunity. To defeat a defense of qualified immunity, Plaintiffs must establish that Officer Sholtis's actions in arresting them violated their constitutional rights and that the rights violated were clearly established at the time of the arrest. *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995). We review the district court's decision de novo. *Fry v. Board of County Comm'rs*, 7 F.3d 936, 938 (10th Cir. 1993).

Plaintiffs allege that their arrest violated their Fourth Amendment right to be free from unreasonable seizures. This argument fails, however, for precisely the same reason that Plaintiffs' state claim for false arrest failed: a warrantless arrest is lawful under the Fourth Amendment if there is probable cause to believe that the person arrested has committed an offense. *Atwater v. Lago Vista*, 532 U.S. 318, 322 (2001) ("[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.") Probable cause exists to arrest if "facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Romero v. Fay* , 45 F.3d 1472, 1476 (10th Cir. 1995) (quoting *Jones v. City and County of Denver* , 854 F.2d 1206, 1210 (10th

-13-

Cir.1988)). Having seen Plaintiffs in the park after closing, Officer Sholtis would have little difficulty establishing both probable cause to arrest them and qualified immunity from a claim of false arrest.

In support of their federal claim for false arrest, Plaintiffs reiterate the arguments they made in support of their state claim: that Officer Sholtis lacked probable cause to arrest them because the ordinance requires specific intent and that the Albuquerque police department's SOPs forbade off-duty officers from making warrantless arrests for misdemeanors. These arguments are no more availing in the federal than the state context.

Incorporating a specific intent requirement into the Ordinance would be of no material assistance to Plaintiffs. As discussed above in relation to Plaintiffs' state-law claim for false arrest, violating the Ordinance requires knowledge of the facts that make prohibited conduct illegal, not knowledge that that conduct is illegal. Plaintiffs were in the Park of their own volition, knew that they were in the Park, and knew what time it was; their knowledge of these facts would satisfy the general intent required by the Ordinance.

As to the fact that Officer Sholtis was off-duty, federal law is no more amenable to the incorporation of municipal police SOPs than is its New Mexico counterpart. Probable cause exists when the arresting officer has knowledge sufficient to convince a prudent person that the arrestee has committed an

-14-

offense. *Romero*, 45 F.3d at 1476. The existence of probable cause depends on the arrestee's behavior and the officer's knowledge of it rather than on whether the officer is on-duty. Even if it were clear that Officer Sholtis had violated the SOPs, that violation would not transform an arrest supported by probable cause into an unconstitutional seizure: "[o]fficials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision." *Davis v. Scherer*, 468 U.S. 183, 194 (1984). An SOP is not enough to create a clearly established right to be arrested without a warrant only by an on-duty police officer; if a right is to be recognized as a clearly established constitutional right, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts." *Herring v. Keaton*, 218 F.3d 1171, 1180 (10th Cir. 2000) (holding that probation officer's disclosure to probationer's sister and employer of his HIV status violated internal policy, but that violation of policy did not make disclosure a violation of constitutional right) (quoting *Anaya v. Crossroads Managed Care Systems, Inc.*, 195 F.3d 584, 594 (10th Cir.1999)). Even if Officer Sholtis violated the SOPs, this violation would not create a violation of a clearly established constitutional right ex nihilo. Since Plaintiffs have failed to establish a constitutional violation, they cannot defeat Officer Sholtis's qualified immunity defense.

*C. Denial of Motion for New Trial Based on Allegations of Discovery Violations*

Plaintiffs also appeal the trial court's denial of their motion for a new trial based on alleged discovery violations related to the production of Ms. Tanberg's broken glasses. We review a lower court's decision to grant or deny a motion for a new trial under an abuse of discretion standard, viewing the evidence in the light most favorable to the prevailing party. *Snyder v. City of Moab*, 354 F.3d 1179, 1187-88 (10th Cir. 2003). Trial courts' assessments of credibility are accorded particular deference:

> we give due deference to the [trial] court's evaluation of the salience and credibility of testimony, affidavits, and other evidence. We will not challenge that evaluation unless it finds no support in the record, deviates from the appropriate legal standard, or follows from a plainly implausible, irrational, or erroneous reading of the record.

*United States v. Robinson*, 39 F.3d 1115, 1116 (10th Cir. 1994) (citations omitted).

Plaintiffs allege, and Officer Sholtis does not deny, that Ms. Tanberg's glasses were broken during her arrest.[4] Plaintiffs insist that, in defiance of a trial subpoena and despite repeated requests, Officer Sholtis failed to produce the glasses until after the trial was concluded. This failure, according to Plaintiffs,

---

[4] Ms. Tanberg testified that her glasses flew off during the arrest, Aplt. App. 295–96, and that they were broken during the arrest, Aplt. App. 323. In closing argument counsel mentioned the broken glasses as an aspect of damages. Aplt. App. 802. Officer Sholtis did not dispute the fact that the glasses were broken. Aple. Br. 24.

deprived them of critical evidence tending to demonstrate that Officer Sholtis used excessive force in arresting Ms. Tanberg. Plaintiffs supported their motion for a new trial with three affidavits from trial counsel stating that Officer Sholtis refused to produce the glasses until after completion of the trial. Officer Sholtis supported his opposition to Plaintiffs' motion with an affidavit from his trial counsel indicating that the glasses were brought to the courtroom on the first day of trial and that Plaintiffs' counsel was made aware of their availability.

Plaintiffs acknowledge that "dueling affidavits [were filed] below regarding whether the eyeglasses were ever brought to the courtroom during trial," but argue that the objective evidence supports their contention that the glasses were not made available until after trial. Aplt Br. 45. In their eagerness to discuss the Ninth Circuit's test for granting a motion for a new trial on the grounds of discovery misconduct, Plaintiffs neglect the effect on this Court of a trial court's credibility determination. The trial court considered these conflicting affidavits and then denied the motion.

Regrettably, the trial court's order does not explicitly articulate the factual findings on which it is premised. The nature of the evidence before the court strongly suggests, however, that a credibility determination informed the trial court's decision to deny Plaintiffs' motion. In supporting or opposing the motion, the parties principally relied on the evidence supplied by directly contradictory

-17-

affidavits. Had the court credited Plaintiffs' affidavits and yet still ruled against them, some discussion of the legal grounds for denying the motion would have been necessary. The most natural explanation for the absence of any such discussion of legal principles in the court's order is that the court did not find Plaintiffs' account of Officer Sholtis's failure to produce the glasses to be credible. We will not overrule a trial court's determination of the credibility of affidavits unless that determination is without support in the record, deviated from the appropriate legal standard, or followed a plainly erroneous reading of the record. *Robinson*, 39 F.3d at 1116. The existence of affidavits on both sides of the question provides an assurance that the trial court's credibility determination has support in the record. The record does not indicate that the trial court's decision to credit Officer Sholtis's evidence was plainly erroneous or irrational. While the absence of any findings of fact or analysis in the trial court's order is less than ideal, there is nothing to suggest that the trial court deviated from the appropriate legal standard. The trial court's (presumed) determination that the Plaintiffs' affidavits were not credible thus survives scrutiny under an abuse of discretion standard.

Even if the trial court based the denial of the motion on its legal merits, rather than on the basis of a credibility determination, the outcome would be the same. This Court reviews the denial of a motion for a new trial under an abuse of

discretion standard. *Snyder*, 354 F.3d at 1187-88. Plaintiffs argue that, when discovery abuse is alleged, a new trial must be granted if the complaining party can show fraud by clear and convincing evidence and show that that fraud prevented them from fully or fairly presenting their case. Aplt. Br. 42 (citing *Jones v. Aero/Chem Corp.*, 921 F.2d 875, 878–79 (9th Cir. 1990)). It is safe to assume that the court did not find that Plaintiffs had proved fraud by clear and convincing evidence. This conclusion finds support in the record in the affidavit contradicting Plaintiffs' account of events. The trial court's (presumed) finding is not plainly implausible, irrational, or erroneous, and we therefore have no basis to overturn it under an abuse of discretion standard.

## D. Exclusion of Evidence of the Albuquerque Police Department's Standard Operating Procedures

Plaintiffs contend that evidence related to the APD SOPs was relevant and admissible as to their claims for excessive force and assault and battery, although the trial court twice excluded the evidence. [5] In granting Officer Sholtis's motion

---

[5] The first ruling pertained only to Plaintiffs' excessive force and assault and battery claims; the second ruling appears to have embraced the false arrest claims as well. Plaintiffs construe both rulings as applying to their claims for excessive force and for false arrest. To the extent that the trial court's rulings embrace Plaintiffs' false arrest claims, they would be upheld even if the evidence were relevant to those claims. Errors in the admission or exclusion of evidence are cause for reversal only when a party's substantial rights have been affected. Fed. R. Evid. 103(a); Fed. R. Civ. P. 61. In light of our determination that Plaintiffs' false arrest claims were properly dismissed, even when evidence of the
(continued...)

-19-

in limine for the exclusion of evidence of the SOPs, the trial court ruled that the SOPs were inadmissible because they were irrelevant to the federal claims and likely to cause jury confusion regarding the state claims. After Officer Sholtis's expert testified that his actions conformed to his training, Plaintiffs sought to introduce the evidence in rebuttal, but the court ruled the SOPs remained inadmissible due to the likelihood of jury confusion and Plaintiffs' waiver. We review a district court's exclusion of evidence under an abuse of discretion standard, *Cartier v. Jackson*, 59 F.3d 1046, 1048 (10th Cir. 1995), reversing "only if we have a firm and definite belief that the trial court made a clear error in judgment." *Macsenti v. Becker*, 237 F.3d 1223, 1236 (10th Cir. 2001).

Our deferential review applies both to a trial court's threshold determination of relevance under Rule 401 and to its conclusion under Rule 403 that relevant evidence should nonetheless be excluded due to its tendency to cause jury confusion or unfair prejudice. *See U.S. v. Tan*, 254 F.3d 1204, 1211 (10th Cir. 2001) ("The district court has considerable discretion in performing the Rule 403 balancing test.") But it is not only our deferential standard of review that diminishes the likelihood of remand for a new trial based on a trial court's admission or exclusion of evidence; even if we were to find an error that

_____

[5](...continued)
SOPs is taken into account, none of Plaintiffs' substantial rights were affected by the exclusion of this evidence.

-20-

amounted to an abuse of discretion, reversible error may be predicated only upon errors that affect a party's substantial rights. Fed. R. Evid. 103(a); Fed. R. Civ. P. 61. Remand for a new trial is a blunt instrument with which to address the many and multifarious evidentiary rulings made during any trial; a deferential standard of review coupled with the distinction between harmless and reversible error ensures that that instrument will be wielded only as necessary to protect litigants' rights to a fundamentally fair adjudication of their disputes.

Plaintiffs sought to introduce two types of evidence related to the SOPs. First, they wished to admit portions of the SOPs themselves into evidence and solicit their expert's opinion as to whether Officer Sholtis's actions conformed to the SOPs. Second, they proffered evidence of the APD's internal evaluation of and response to Officer Sholtis's conduct. We will deal with each type of evidence in turn. Plaintiffs maintain Officer Sholtis violated the SOP providing that "[w]here force is warranted, officers should assess the incident in order to determine which technique or weapon will reasonably de-escalate the incident and bring it under control safely. Officers shall use only that force which is reasonable and necessary to effect lawful objectives." APD SOP § 2-52-2A. To the extent that the first half of the SOP requires an assessment of an officer's choice between various techniques for de-escalation, it is beyond the scope of the inquiry mandated by state and federal law, which require that an officer use

-21-

reasonable, not optimal, force. *See Graham v. Connor*, 490 U.S. 386, 396–97 (1989) ("The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation"); *Medina v. Cram*, 252 F.3d 1124, 1133 (10th Cir. 2001) ("[T]he reasonableness standard does not require that officers use alternative less intrusive means . . . . [To rule otherwise] would be evaluating the officers' conduct from the 20/20 perspective of hindsight rather than from the perspective of an officer making split-second judgments on the scene.") (internal citations and quotations omitted); *Mead v. O'Connor*, 344 P.2d 478, 479–80 (N.M. 1959) ("Officers, within reasonable limits, are the judges of the force necessary to enable them to make arrests . . . . When acting in good faith, the courts will afford them the utmost protection, and they will recognize the fact that emergencies arise when the officer cannot be expected to exercise that cool and deliberate judgment which courts and juries exercise afterwards").

The second half of the SOP merely duplicates the reasonableness standard that governs claims of excessive force under state and federal law. Federal excessive force claims are governed by an objective standard: a use of force violates the Fourth Amendment if it is unreasonable under the circumstances a law enforcement officer confronts. *See Graham*, 490 U.S. at 388. New Mexico

-22-

law permits an officer "to use such force as [is] reasonably necessary under all the circumstances" to effect an arrest. *Mead,* 344 P.2d at 479. That the SOP duplicates the federal and state standards for excessive force makes it less likely that evidence of the SOPs would be relevant. Relevant evidence is that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. The jury was already obliged to determine whether Officer Sholtis's conduct violated the requirement of state and federal law that he use only a reasonable degree of force in effecting Plaintiffs' arrest. That the SOP required precisely what the law required of him does not make it more or less likely that Officer Sholtis's use of force was reasonable; the SOP is therefore not relevant.

Beyond these general concerns with relevance, there are more particular reasons to find this evidence irrelevant as to Plaintiffs' federal claims. In the exclusionary rule context, the Supreme Court has rejected the use of local police regulations as a standard for evaluating constitutionality of police conduct, on the ground that such a "basis of invalidation would not apply in jurisdictions that had a different practice." *Whren v. United States*, 517 U.S. 806, 815 (1996). That logic would seem to apply equally to damage suits under § 1983. This Court has consistently held that the violation of police regulations is insufficient to ground a

-23-

§ 1983 action for excessive force. *Marquez v. City of Albuquerque*, — F.3d —, 2005 WL 435469, 10th Cir. (N.M.), Feb. 25, 2005; *Medina*, 252 F.3d at 1133 (10th Cir. 2001); *Romero v. Board of County Com'rs of County of Lake, State of Colo.*, 60 F.3d 702, 705 (10th Cir. 1995); *Wilson v. Meeks*, 52 F.3d 1547, 1554 (10th Cir. 1995). The plaintiffs in *Romero* argued that a police officer had contributed to the dangerous situation which led to his use of force, making him liable for the use of force his own actions helped make necessary. 60 F.3d at 704. The *Romero* plaintiffs supported their theory with evidence that the police officer's failure to handcuff the arrestee early in their encounter violated police regulations, and contended on appeal that this evidence should have precluded the trial court's grant of summary judgment. *Id*. We affirmed the trial court's ruling, holding that the police officer's failure to handcuff the arrestee was not relevant to the § 1983 inquiry and "[did] not become relevant simply because such actions may be required by state law and police procedures." *Id*. That an arrest violated police department procedures does not make it more or less likely that the arrest implicates the Fourth Amendment, and evidence of the violation is therefore irrelevant. If Officer Sholtis violated the SOP governing the use of force in effecting arrest, that fact might well be pertinent to the Albuquerque Police Department's future decisions to promote, retain, or discipline him; it is not relevant to determining if Plaintiffs' arrest violated the reasonableness

requirement of the Fourth Amendment.

Having determined that the SOPs themselves were not relevant to Plaintiffs' federal claims, the trial court determined that the SOPs might be relevant to Plaintiffs' state claims, but were nevertheless inadmissible. The trial court concluded that evidence of the SOPs could cause the jury to mistake violations of the SOPs for a constitutional violation. In excluding evidence because of its potential to create jury confusion, the trial judge weighs the probative value of the evidence against the likelihood that it will mislead the jury. Fed. R. Evid. 403. We review this balancing process for abuse of discretion, and accord considerable deference to a trial court's determination that evidence is likely to cause jury confusion. *United States v. Guardia*, 135 F.3d 1326, 1331-32 (10th Cir. 1998). Given the minimal probative value of an SOP that merely duplicates the legal standard already under consideration, and the likelihood that the jury could confuse legal and administrative standards, we cannot find that the trial court abused its discretion in excluding the evidence with regard to Plaintiffs' state claims.

Although plaintiffs frequently wish to use administrative standards, like the Albuquerque SOPs, to support constitutional damages claims, this could disserve the objective of protecting civil liberties. Modern police departments are able—and often willing—to use administrative measures such as reprimands, salary

-25-

adjustments, and promotions to encourage a high standard of public service, in excess of the federal constitutional minima. If courts treated these administrative standards as evidence of constitutional violations in damages actions under § 1983, this would create a disincentive to adopt progressive standards. Thus, we decline Plaintiffs' invitation here to use the Albuquerque Police Department's operating procedures as evidence of the constitutional standard.

The trial court's exclusion of the SOPs was particularly appropriate because Plaintiffs wished to admit not only evidence of the SOPs themselves, but also evidence demonstrating that the APD found that Officer Sholtis violated the SOPs and attempted to discipline him for it. Explaining the import of these convoluted proceedings to the jury would have been a confusing, and ultimately needless, task. The Albuquerque Chief of Police followed the recommendation of an internal affairs investigator to discipline Officer Sholtis both for making an impermissible off-duty arrest and for use of excessive force. An ad hoc committee subsequently reversed this decision. Additional testimony would have been necessary to help the jury understand the significance of these determinations and the procedures used to arrive at these contradictory results. This additional testimony explaining the procedures used at each step in the APD's investigation and decision-making would have led the jury ever further from the questions they were required to answer, and embroiled them in the

dispute over whether Officer Sholtis's actions did or did not violate the SOPs. At the end of this time-consuming detour through a tangential and tendentious issue, the jury would have arrived at the conclusion that the APD itself seems to have been unable to resolve satisfactorily the question whether Plaintiffs' arrest violated the APD SOPs. The rules of evidence and our prior law caution against detours as extended and fruitless as this one would almost certainly have been. *See* Fed. R. Evid.611(a)(2); *U.S. v. McVeigh*, 153 F.3d 1166, 1191 (10th Cir. 1998) (upholding exclusion of evidence with the potential to "sidetrack the jury into consideration of factual disputes only tangentially related to the facts at issue in the current case."); *U.S. v. Guardia* , 135 F.3d 1326, 1332 (10th Cir. 1998) (explaining that exclusion of evidence of unrelated incidents would have "transform[ed] the trial of two incidents into the trial of six incidents . . . mak[ing] it difficult for the jury to separate the evidence of the uncharged conduct from the charged conduct").

The similarity of the SOP addressing excessive force to the objective standard employed by state and federal law would render jury confusion even more likely, tempting the jury to conclude that if experienced police officers interpreted Officer Sholtis's actions as a violation of SOPs employing the same standards as the law, then Officer Sholtis must also have violated legal requirements. When, as here, the proffered evidence adds nothing but the

substantial likelihood of jury confusion, the trial judge's exclusion of it cannot be an abuse of discretion.

Our conclusion that the trial court correctly excluded evidence of the SOPs on Officer Sholtis's motion in limine is not the end of the matter. Plaintiffs argue that, having succeeded in excluding evidence of the SOPs, Officer Sholtis opened the door to rebuttal evidence regarding the SOPs during direct examination of his expert witness. Officer Sholtis's expert testified repeatedly that Officer Sholtis's behavior throughout his encounter with Plaintiffs conformed to his training:

> Q.  Have you formed an opinion as to whether the use of force in the arrest of Ms. Tanberg and Ms. Ortega was reasonable, proper, and consistent with police procedures in the training of Officer Sholtis?
> A.  Well, yes. And I believe that it was—that his actions were reasonable and appropriate based on Ms. Ortega's behavior at the scene and her attack.
> Q.  Okay. Did you form an opinion as to whether the use of force in the arrest of Ms. Tanberg was reasonable, proper, and consistent with Officer Sholtis' training and proper police practices?
> A.  Well, I found that, even though it was very quick, and I know that there was not a lot of time elapsed, the fact is that the decision to not cooperate was Mrs. Tanberg's decision . . . . And because of her behavior at the scene, I believe that the actions of Officer Sholtis was [sic] reasonable, appropriate, and followed his training.

Aplt. App. 726–27.

Plaintiffs argue that having admitted this testimony the trial court was obliged to allow Plaintiffs to test the bases of the expert's opinion that Officer

-28-

Sholtis's behavior conformed to his training through cross-examination regarding the SOPs.

The trial court initially agreed, distinguishing between its earlier exclusion of such evidence and admission of the evidence at trial once Officer Sholtis opened the door. At the beginning of a lunch break for which the jury had been excused, Plaintiffs' counsel, at the court's prompting, attempted to frame a series of questions to be asked on cross-examination after lunch. Plaintiffs' counsel was apparently distracted by the frequent interruptions of Officer Sholtis's counsel, and eventually asked if he could return to his office and prepare written questions for submission to the court. The trial court agreed, observing that such a process would be "much easier than doing this." Aplt. App. 766. Trial was scheduled to resume at 1:00; at noon the court instructed Plaintiffs' counsel to present written questions to the court at 12:30. The court gave no indication that prejudice would attach to late submission of the questions.

At 1:08, when the transcript resumes, the trial court reversed its earlier ruling and excluded evidence of the SOPs:

> I told Counsel to be back with the precise questions . . . by 12:30.
> The Court came on the bench at 12:31 or 2, and nobody was here
> until around 12:40 for sure. So as far as I am concerned, it's waived
> . . . . Anyway, more than that, on reflection I am not sure it's the test
> for excessive force, what a reasonable officer would to [sic] under
> the circumstances, and I am not sure that this wouldn't be confusing
> to the jury anyway . . . . I am going to rule that the questions were
> waived by being late and that they are 403 confusing.

Aplt. App. 767. When Plaintiffs' counsel, in an effort to persuade the court to reconsider, stressed the frequency with which Officer Sholtis's expert had testified that Officer Sholtis acted in accordance with his training, the court indicated that "at that time I had agreed with you . . . but 12:30 is 12:30." *Id*.

When a party opens the door to a topic, the admission of rebuttal evidence on that topic becomes permissible. *See U.S. v. Burch*, 153 F.3d 1140, 1144 (10th Cir. 1998). Permissible does not mean mandatory, however; the decision to admit or exclude rebuttal testimony remains within the trial court's sound discretion. *Id.*

We do not believe the trial court abused its discretion. While admission of the SOPS may have been relevant to the issue of Officer Sholtis's training,[6] with the proper foundation, a close examination of the SOPs casts doubt on whether they could be properly characterized as rebuttal evidence. Rebuttal evidence is evidence which attempts to "disprove or contradict" the evidence to which it is contrasted. *Black's Law Dictionary* 579 (7th ed. 1999). Rebuttal evidence is not any evidence an aggrieved litigant may wish to admit in response to a topic

---

[6] The record does not show that the SOPs formed part of Officer Sholtis's training; Plaintiff's first proposed question aimed to establish this point. While we cannot attribute the record's deficiency in this regard to the Plaintiffs, neither can we assume that the SOPs were part of the training to which Officer Sholtis's expert referred in his testimony. Officer Sholtis argued that his expert's references to training were narrowly addressed to the expert's own training program for the appropriate use of force, which had been adopted by the APD.

introduced by his opponent; whether or not rebuttal evidence is admissible depends on "whether the initial proof might affect the case and whether the rebuttal evidence fairly meets the initial proof." Christopher B. Mueller & Larid C. Kirkpatrick, 1 Federal Evidence § 12 n.2 (2d ed. 2004). *See also United States v. Stitt*, 250 F.3d 878, 897 (4th Cir. 2001) ("[W]hen otherwise inadmissible, rebuttal evidence must be reasonably tailored to the evidence it seeks to refute . . . . [T]here must be a nexus between the purported rebuttal evidence and the evidence that the purported rebuttal evidence seeks to rebut.")

The language of the SOPs is sufficiently general and sufficiently similar to the federal standard for excessive force—the SOPs call for officers to use "only that force which is reasonable and necessary to effect lawful objectives," APD SOP § 2-52-2A—that admission of this evidence would have added nothing to the evidence Plaintiffs were allowed to adduce.

But again, it is not just the SOPs themselves Plaintiffs wished to admit, but also the opinions of others, Officer Sholtis's superiors among them, that Officer Sholtis's activities did not conform to his training. While evidence of the APD's efforts to evaluate Officer Sholtis's conduct and discipline him for it had the potential to undermine the opinion that Officer Sholtis's actions conformed to his training, it also presented significant danger of jury confusion. For the reasons we have already given in relation to the trial court's initial exclusion of this

evidence, we conclude that it was not an abuse of discretion for the trial judge to exclude the proffered rebuttal evidence on the basis of jury confusion.

Because we have determined that the trial court did not err in excluding evidence of SOPs, we need not reach the trial judge's alternative justification for excluding the evidence, that ten minutes' lateness constituted waiver. Without deciding the question, however, we do note that the trial court's right to "exercise reasonable control over the mode and order of . . . presenting evidence . . . so as to . . . avoid needless consumption of time," Fed. R. Evid. 611(a), is to be exercised reasonably and with a view to the overarching requirement that the rules of evidence are to be construed not only so as to eliminate delay, but also so as to secure fairness, *see* Fed. R. Evid. 102.

*E. Exclusion of R. 404(b) Evidence of Other Incidents*

Plaintiffs sought to admit evidence of three other occasions when Officer Sholtis allegedly arrested individuals without probable cause or used excessive force. The trial court granted Officer Sholtis's motion to exclude this evidence on the grounds that it was both irrelevant and highly prejudicial. Plaintiffs insist that their proffered evidence is relevant under Fed. R. Evid. 404(b) to show intent and absence of mistake as well as "consciousness and state of mind." Aplt. Br. 55. These potential bases of relevance all tend to the same point, that Officer Sholtis intended to use excessive force on Plaintiffs because he demonstrated

similar intent on previous occasions.[7]  We review a trial court's exclusion of character evidence for abuse of discretion.  *See United States v. Lazcano-Villalobos*, 175 F.3d 838, 846 (10th Cir.1999).

The Federal Rules of Evidence generally preclude the use of evidence of crimes or wrongs unrelated to the conduct at issue if that evidence is offered to prove a propensity to behave in a particular manner.  If offered for a purpose other than to demonstrate propensity, evidence of acts unrelated to the one at issue may be admissible under Rule 404(b) if the evidence meets the four-part test of *Lazcano-Villalobos*, which requires that

> (1) the evidence was offered for a proper purpose; (2) the evidence was relevant; (3) the trial court determined under Fed. R. Evid. 403 that the probative value of the evidence was not substantially outweighed by its potential for unfair prejudice; and (4) the trial court gave the jury proper limiting instructions upon request.

*Id*. at 845–46.  Because Plaintiffs' federal claim for excessive force requires assessment of Officer Sholtis's conduct under an objective standard, Plaintiffs have failed to establish the relevance of evidence tending to shed light on aspects of Officer Sholtis's mental state to this claim.

---

[7] Plaintiffs also urge consideration of the other incidents in relation to their false arrest claims.  In light of our determination that an arresting officer's state of mind is irrelevant to whether an arrest is supported by probable cause, and therefore lawful, evidence of other acts tending to shed light on Officer Sholtis's state of mind is irrelevant to Plaintiffs' false arrest claims and therefore excludable under Fed. R. Evid. 402.

-33-

Under federal law, claims for excessive force are analyzed under the Fourth Amendment reasonableness standard. *Graham*, 490 U.S. at 395. This standard is an objective one to which an officer's personal motivations in using a particular degree of force are irrelevant: "[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Id*. at 397. Under this objective standard, evidence tending to show Officer Sholtis's subjective state of mind is irrelevant to the jury's proper inquiry.

The trial court found the evidence of other acts to be irrelevant to Plaintiffs' state claim for assault and battery as well. Plaintiffs reassert on appeal their argument that the excluded similar acts evidence is relevant to their claims for assault and battery, pointing out that assault requires proof of specific intent under state law and that the prior acts are relevant to establish Officer Sholtis's intent to commit assault. However, evidence of prior acts has no bearing on Officer Sholtis's specific intent necessary for assault and battery. As the trial court correctly pointed out, the intent required by state tort law is not a malicious intent to cause harm, but rather the intent to perform the actions, combined with the belief that certain consequences are "substantially certain to result." *California First Bank v. New Mexico*, 801 P.2d 646, 656, n.6 (N.M. 1990)

(quoting *Restatement (Second) of Torts* § 8A (1965)). Officer Sholtis does not dispute that he intended the consequences of his actions in using force to apprehend Plaintiffs, and highly prejudicial evidence offered to prove a point not in dispute is properly excluded under Rule 403. *See Old Chief v. United States*, 519 U.S. 172, 184–85 (1997).

While New Mexico tort law generally may not require proof of evil intentions for liability, state law governing the particular question of when the use of force to effect an arrest is sufficiently excessive to expose an arresting officer to a claim for assault and battery is less clearly objective in nature. Although New Mexico law requires that an officer's use of force be objectively reasonable and reflects the same sensitivity as federal law to the split-second decisions officers must make, an officer's good faith appears to be the prerequisite for the exercise of a court's sympathetic review of an arrest: "[s]o long as officers act in good faith and use no more force than reasonably necessary to preserve the peace, they are accorded reasonable latitude in the use of force." *State v. Prince*, 972 P.2d 859, 862 (N.M. App. 1998), *see also Mead,* 344 P.2d at 479–80 (N.M. 1959) (an officer making a misdemeanor arrest is entitled "to use such force as [is] reasonably necessary under the circumstances . . . . Officers, within reasonable limits are the judges of the force necessary to enable them to make arrests . . . . When acting in good faith, the courts will afford them the utmost protection").

Neither the parties nor the trial court discussed whether New Mexico law imports a subjective element into the evaluation of an arresting officer's use of force, but we need not determine this point of New Mexico law because the judge's alternative ground for excluding the evidence is adequate. The trial court held that the prejudicial nature of the other acts evidence substantially outweighed its probative value. We review a trial court's exclusion of evidence under Rule 403 for abuse of discretion. *United States v. Call*, 129 F.3d 1402, 1405 (10th Cir. 1997). Although offered to prove intent, evidence suggesting that Officer Sholtis had been accused of using excessive force in making other arrests could also suggest to a jury that Officer Sholtis is prone to the use of excessive force. While the potential of the other acts evidence to create unfair prejudice is clear, its probative value is more difficult to gauge, a task made no easier by Plaintiffs' vague assertion that the evidence is relevant to show "malicious intent, absence of mistake and purposeful and unlawful conduct." Aplt. Br. 58.

If by their argument that the proffered evidence would show intent, absence of mistake, and deliberate unlawful conduct, Plaintiffs mean that the proffered evidence would show that Officer Sholtis knew that he was using an objectively unreasonable degree of force because he had done so before, the evidence they

have offered would do very little to prove their point.[8] Although the record contains few details regarding the two other incidents involving allegations of excessive force, those incidents do not appear to be sufficiently similar, either in terms of the factual circumstances Officer Sholtis confronted or the techniques he employed, to justify an inference that those incidents had put Officer Sholtis on notice that his use of force in subduing Plaintiffs was excessive. *See United States v. Zamora*, 222 F.3d 756, 762 (10th Cir. 2000) ("[T]he uncharged crime must be similar to the charged offense . . . . The more similar the act or state of mind is to the charged crime, the more relevant it becomes").[9]

---

[8] The record furnishes very little information about these other incidents, and no information of an objective character at all. One of the incidents relates to an allegedly false arrest that was unaccompanied by any use of force, and is therefore irrelevant to the excessive force claims. Plaintiffs' brief supplies the only information in the record regarding the remaining two incidents. The first incident involved a warrantless entry into a home followed by a "forceful[]" arrest." Aplt. Br. 56–57. Plaintiffs indicate that a federal district judge has entered an order in a civil suit arising from this incident "finding that Defendant Sholtis had violated the homeowners' Fourth Amendment rights." *Id*. at 57. The order is not included in the record, nor is there any indication of which of the homeowners' Fourth Amendment rights was affected. The second incident involved a traffic stop which culminated in Officer Sholtis "forcefully pull[ing] [the driver] out of the window of his car, causing him injury." *Id*. Neither of these incidents bears a strong factual resemblance to Officer Sholtis's arrest of the Plaintiffs in this case.

[9] Plaintiffs suggested at the trial level that Plaintiffs' arrest was motivated by Officer Sholtis's belief that Ms. Tanberg and Ms. Ortega were involved in a romantic relationship. There is nothing in the record to suggest that the other arrests discussed presented similar concerns to Officer Sholtis.

Moreover, there is nothing in the record to indicate that the other two incidents in fact involved an excessive use of force. The first incident to which Plaintiffs point involved a warrantless entry into a private home and a "forceful[] arrest" of a person in the home. Aplt. Br. 57. While Plaintiffs indicate that a district judge "entered an order . . . finding [Officer] Sholtis had violated the homeowners' Fourth Amendment rights," the record does not reveal the grounds on which the court's determination of liability rested. *Id.* Officer Sholtis may have been found liable for the warrantless entry or the warrantless arrest rather than for his use of force. The other incident to which Plaintiffs point seems even less likely to support any conclusion regarding Officer Sholtis's intentions as they relate to his use of force in this case. Other than Plaintiffs' assertion that Officer Sholtis "forcefully pulled [a motorist] out of the window of his car, causing him injury," the record offers no indication that Officer Sholtis's use of force on this occasion was excessive. *Id.*

Given the lack of similarity between the other acts evidence and Plaintiffs' arrest, and the fact that the record does not permit the conclusion Officer Sholtis used excessive force in the other arrests, the proffered evidence would do little to establish Officer Sholtis's awareness that his use of force in arresting Plaintiffs might be problematic. Indeed, there appears to be little to connect the other acts evidence with Plaintiffs' arrest beyond Plaintiffs' assertions that excessive force

-38-

was used in each. If, as seems only too likely, Plaintiffs wished the jury to infer that Officer Sholtis often intends to use excessive force when arresting the hapless innocents who cross his path, the evidence is offered to prove propensity rather than for a proper purpose, and was properly excluded. Fed. R. Evid. 404(a). If, on the other hand, Plaintiffs intended to show that Officer Sholtis knew that the type and degree of force he used on Plaintiffs was excessive, the evidence they offered would not serve to prove that point. In either event, a trial court does not abuse its discretion in excluding evidence of only slight probative value that creates a substantial danger of unfair prejudice.

### III. Conclusion

The trial court's grant of judgment of a matter of law as to Plaintiffs' state and federal claims for false arrest is affirmed. We also affirm the trial court's denial of a motion for a new trial based on discovery violations. The trial court did not abuse its discretion in excluding evidence of the Albuquerque Police Department's Standard Operating Procedures and evidence of other acts. The judgment below is accordingly **AFFIRMED.**