FILED
United States Court of Appeals
Tenth Circuit

September 4, 2013

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

iFREEDOM DIRECT, f/k/a New
Freedom Mortgage Corporation,

Plaintiff-Appellant,

v.

FIRST TENNESSEE BANK
NATIONAL, successor-in-interest to
First Horizon Home Loan Corporation,

Defendant-Appellee.

No. 12-4164
(D.C. No. 2:09-CV-00205-DN)
(D. Utah)

ORDER AND JUDGMENT[*]

Before **HARTZ**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **EBEL**, Circuit
Judge.

In this diversity case, Plaintiff iFreedom Direct Corporation ("iFreedom")

appeals from the district court's judgment entered after a jury verdict in favor of

defendant First Tennessee Bank National Association ("First Tennessee") on

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

iFreedom's claim for breach of contract. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

## I. Background

In August 2006, iFreedom and First Tennessee's subsidiary, First Horizon Home Loan Corporation, entered into an Asset Purchase Agreement ("APA") in which iFreedom sold its retail and wholesale mortgage loan operations to First Tennessee. In the APA, the parties agreed on a purchase price consisting of a lump-sum payment, as well as the possibility of additional "Earnout Payments." *See* Aplt. App., Vol. I at A62-63. The Earnout Payments were contingent on the former iFreedom employees meeting certain threshold targets for loan production.

In August and November 2007, First Tennessee made Earnout Payments to iFreedom for both retail and wholesale loan production. In 2008, First Tennessee decided to sell the mortgage operations to MetLife Bank National Association ("MetLife"). After the sale to MetLife, First Tennessee attempted to make an Earnout Payment of $220,588 to iFreedom, but iFreedom refused to accept it.

In March 2009, iFreedom filed a lawsuit against First Tennessee, bringing claims for breach of contract and breach of the covenant of good faith and fair dealing. First Tennessee moved for summary judgment on iFreedom's complaint. The district court denied the motion, concluding there were disputed issues of material fact as to whether: (1) iFreedom waived the non-assignment provision in the APA, (2) the non-assignment provision applied to First Tennessee's sale to MetLife,

- 2 -

and (3) the sale or assignment caused any damages.  The case proceeded to a jury trial.

At the close of evidence, First Tennessee and iFreedom both moved for directed verdicts.  The district court granted in part First Tennessee's motion, concluding that First Tennessee was entitled to judgment in its favor for any alleged breach of §§ 2.5(b), 4.5, 5.6, and 10.1 of the APA.  The court denied the motion as to First Tennessee's alleged breach of § 10.5 (the non-assignment provision).  The district court also granted in part and denied in part iFreedom's motion, directing a verdict on First Tennessee's affirmative defense of estoppel, but denying it as to the waiver defense.  The jury ultimately determined that First Tennessee had not breached § 10.5.  This appeal followed.

## II.  Discussion

iFreedom contends that the district court erred in five ways during trial by:
(1) giving only part of iFreedom's proposed jury instruction on assignment;
(2) rejecting one of iFreedom's proposed jury instructions; (3) directing a verdict in favor of First Tennessee on several claims; (4) using an improper special verdict form; (5) denying a directed verdict on First Tennessee's affirmative defense of waiver and instructing the jury on the waiver defense.

### A.  *Jury Instructions*

We review for abuse of discretion the district court's refusal to give a proposed jury instruction.  *See Zokari v. Gates*, 561 F.3d 1076, 1090 (10th Cir.

- 3 -

2009). We review de novo whether the instructions as a whole accurately informed the jury of the governing law. *See id.* The parties agreed in the APA that the agreement would be governed by Texas law.

iFreedom alleged that First Tennessee breached the non-assignment provision in § 10.5 of the APA when it sold its mortgage operations to MetLife. That section states in relevant part: "No Party hereto may assign any of its rights or obligations hereunder to any other Person, without prior written consent of the parties . . . ." Aplt. App., Vol. I at A86. First Tennessee asserted there was no breach of § 10.5 because it retained its rights and obligations to make the Earnout Payments to iFreedom.

iFreedom proposed the following jury instruction on assignment:

> The word "assignment" means the transfer or setting over of property, or some right or interest from one person to another. The person who "assigns" something generally loses all control over the thing that is assigned and can do nothing to defeat the rights of the person to whom the thing is assigned.

*Id*. at A209. First Tennessee objected to the instruction, arguing that it was unnecessary and inapplicable to the facts of the case. The district court kept the first sentence of the instruction, but declined to include the second sentence, explaining that the instruction was "adequate" as is. Aplee. Supp. App. at SA242-43. iFreedom contends that the district court erred in not giving its full instruction.

We see no abuse of discretion in the district court's decision not to include the second sentence of iFreedom's proposed instruction on assignment. The first part of

the instruction provides the general definition of "assignment" as found in Texas law. *See Johnson v. Structured Asset Servs.*, *LLC,* 148 S.W. 3d 711, 721 (Tex. Ct. App. 2004) ("The word 'assignment' has a comprehensive meaning and in its most general sense means the transfer or setting over of property, or some right or interest."). The second sentence relates to the rights of the parties after an assignment takes place. Because the dispute in this case was whether First Tennessee breached the non-assignment provision in § 10.5 when it sold its mortgage operations to MetLife, the jury did not need to be instructed on the legal rights of the parties post-assignment because it was not deciding any issue about those rights in this case. Accordingly, the district court acted within its discretion in instructing the jury on the general definition of assignment.

iFreedom also contends that the district court erred in not giving the following proposed instruction: "Whenever one party to an agreement has relied on the skill, character or credit of the other party to the agreement, the law will not permit one of the parties to substitute for himself another person in whom the opposite party may not repose an equal trust or confidence." Aplt. App., Vol. I at A156. First Tennessee objected to the instruction as inapplicable to the facts of this case.

iFreedom cited to *Lancaster v. Greer*, 572 S.W.2d 787, 790 (Tex. Civ. App. 1978), as the basis for this jury instruction. *See* Aplt. App., Vol. I at A156. In *Lancaster*, the court was considering the assignability of an earnest money contract that was silent on assignment. *See Lancaster*, 572 S.W.2d at 789 ("Nowhere does the

contract authorize assignment, nor does the contract prohibit assignment.").  In determining whether the contract could be assigned, the court explained the general rule that all contracts are assignable, but noted an exception for credit contracts because they "involve a relationship between the seller and buyer of personal confidence and trust." *Id*. at 790.  The court further explained that such contracts are not assignable unless the original contracting party consents, and it was "undisputed that Greer did not consent to the assignment." *Id*.  The court therefore held that the earnest money contract at issue in that case was not assignable.

This case is distinguishable from *Lancaster* and the other cases iFreedom cites in its opening brief that relate to the same legal proposition prohibiting the assignability of a contract involving personal trust and confidence without the original contracting party's consent.[1]  Here, there was express language in Section 10.5 prohibiting the assignment of any rights or obligations under the contract without the other party's consent, and the jury's task was to decide whether First Tennessee had breached that provision.  Accordingly, there was no need for

---

[1]     *See*, *e.g*., *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 596 (Tex. 1992) (internal citations omitted) ("As a general rule, all contracts are assignable.  An exception to this rule is that a contract that relies on the personal trust, confidence, skill, character or credit of the parties, may not be assigned without the consent of the parties."), *superseded by statute on other grounds as recognized in Subaru of Am., Inc. v. David McDavid Nissan, Inc*., 84 S.W.3d 212, 225-26 (Tex. 2002)); *Peniche v. Aeromexico*, 580 S.W. 2d 152, 156 (Tex. Ct. App. 1979) ("The evidence establishes that the contract before this court was based upon the personal trust, acquaintance and confidence that existed between [the contracting parties], and hence was one for personal services.  This being true, the contract could not be assigned without an agreement of the parties.").

iFreedom's requested instruction about the non-assignability of a contract involving personal trust and confidence. Although iFreedom argues in its opening brief that there is a distinction between assignment and delegation, and that its proposed instruction related to an alternate common law theory prohibiting the delegation of obligations under a contract involving personal trust and confidence, the case it presented to the district court does not support this alternate theory. Under these circumstances, the district court acted within its discretion in refusing to give iFreedom's proposed instruction.

Finally, we have reviewed the jury instructions as a whole and conclude that they adequately stated the governing law. Accordingly, we find no reversible error involving the jury instructions.

B. *Directed Verdict*

iFreedom argues that the district court erred in granting First Tennessee's motion for a directed verdict on its claims that First Tennessee breached certain representations and warranties in the APA. "We review a district court's grant of a motion for directed verdict de novo." *Tanberg v. Sholtis*, 401 F.3d 1151, 1156 (10th Cir. 2005).

iFreedom contends that First Tennessee breached representation and warranties in §§ 4.5, 5.6, and 10.1 of the APA when it sold its mortgage business to MetLife in 2008. But we agree with the district court that the plain language of the APA supports First Tennessee's position that the representations and warranties in

§ 4.5 were made as of the date of the Agreement and did not represent a continuing obligation on its part after the closing date, § 5.6 pertains to the period before closing, and § 10.1 is a contractual statute of limitations.

Article 4 of the APA begins with First Tennessee stating that it "represents and warrants to the Seller and Shareholder *as of the date of this Agreement* as follows," and in § 4.5, it makes all of its representations and warranties in the present tense. Aplt. App., Vol. III at A507-08 (emphasis added). There is no language indicating a continuing obligation to maintain the representations and warranties in § 4.5 after the closing. *See id.* Section 5.6 is in Article V, "Closing Covenants," and is an obligation to give notice of any changes in the representations and warranties during the period between the signing of the agreement and the closing date. *See id.* at A509-10. The APA has separate articles for closing covenants and post-closing covenants, *see id.*, and iFreedom did not assert a breach of any of the post-closing covenants. The district court's interpretation that § 5.6 required notice of changes *before closing* is further supported by First Tennessee's compliance certificate in which it certified that: "The representations and warranties made . . . in Article IV of the Agreement were accurate in all material respects as of the date of the Agreement and are accurate in all material respects as of the date of this Certificate." Aplee. Supp. App. at SA031.

Finally, we, like the district court, read § 10.1 as a contractual statute of limitations that allows a claim for breach to survive for three years from the closing

date if a party discovers that representations and warranties made in the APA as of the closing date were not accurate. Accordingly, we see no error in the district court's decision to grant First Tennessee a directed verdict on iFreedom's claims for breach of §§ 4.5, 5.6, and 10.1 of the APA.

C. *Special Verdict Form and Waiver Defense*

iFreedom contends that the district court used a flawed special verdict form because it "was not adjusted to the claims in the case, and did not even permit the jury to award amounts that [First Tennessee] admitted it owed but had failed to pay. Instead, the verdict form erroneously asked only if [First Tennessee] had breached the non-assignment provision in the Freedom APA." Aplt. Br. at 48. We disagree. The only claims that remained after the district court's oral ruling on directed verdict were the alleged breaches of §§ 2.5(b) and 10.5, and iFreedom admitted it was only seeking damages for breach of § 10.5, *see* Aplee. Supp. App. at SA231.[2] The district court specifically asked if iFreedom had a breach of contract claim for failure to pay "the earnouts," and iFreedom's counsel responded, "No." *Id*. at SA233-34. We see no abuse of discretion in the district court's use of the special verdict form.

iFreedom also asserts that the district court erred in not directing a verdict in its favor on First Tennessee's affirmative defense of waiver and including the waiver defense on the special verdict form. We need not resolve these issues because any

---

[2]     In its written order, the district court also granted the motion for directed verdict on § 2.5(b). *See* Aplt. App., Vol. II at A374.

alleged error is harmless. *See* Fed. R. Civ. P. 61 ("At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."). The jury did not reach the question of waiver on the special verdict form because it found that First Tennessee had not breached the contract. *See* Aplt. App., Vol. I at A350. Although iFreedom argues that the failure to grant the directed verdict on the waiver defense "negatively influenced the jury in its deliberations on Freedom's claims," Aplt. Br. at 49, it has pointed to no authority to support its position. In a similar situation where a party argued that an erroneously submitted claim "tainted" the jury even though the jury did not find against the party on that claim, we held that any alleged error in submitting to a jury a claim that resulted in no damages should be disregarded. *See Strickland Tower Maint., Inc., v. AT&T Commc'ns*, 128 F.3d 1422, 1430 (10th Cir. 1997). We see no reversible error in the district court's denial of the directed verdict on the waiver defense and its decision to include it on the special verdict form.

<u>III.  Conclusion</u>

We affirm the judgment of the district court.

Entered for the Court

Wade Brorby
Senior Circuit Judge

- 10 -